George R. McNeill

*v.*

The City of Chicago *et al.*

*Opinion filed October 24, 1904—Rehearing denied Dec. 13, 1904.*

1. Mandamus—*one seeking restoration to office must show he is an officer de jure.* One seeking a writ of *mandamus* against a city to compel his restoration to office, particularly where the compensation of the office is involved, must show that he is an officer *de jure* as well as *de facto.*

2. Same—*what allegation does not show that petitioner was an officer de jure.* An allegation that petitioner was appointed police patrolman in 1887 and that he then qualified and served thence until 1898 and drew his pay does not show that he was an officer *de jure* at the latter date, there being no averment that he was ever re-appointed to the office after 1887.

3. Same—*when mandamus cannot be awarded to compel restoration of name to pay-roll.* Mandamus to compel the restoration of petitioner's name to the pay-roll of the respondent city as police patrolman will not be awarded where the most that appears from the pleadings and proof is that he was a *de facto* officer at the time his name was dropped.

4. Same—*replication in mandamus should be a common law replication.* The plea succeeding the answer to petition for *mandamus* should be a common law replication, since a general replication, such as is usually filed in chancery cases, does not have the effect of a traverse of the matters set up in the answer.

5. Same—*when petitioner is not entitled to protection of Civil Service act.* Petitioner in *mandamus* to compel his restoration to office is not entitled to claim the protection of the Civil Service act, where by his own showing he was not appointed by the civil service commission after examination but the appointment was refused him.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. Clifford, Judge, presiding.

This is a petition for *mandamus,* filed by George R. McNeill, making the city of Chicago, Carter H. Harrison, as mayor of said city of Chicago, Joseph H. Kipley, as superintendent of police of said city of Chicago, and Robert Lind-

blom, Edward M. Carroll and John W. Ludwig, as civil service commissioners of said city, parties defendant, whereby the petitioner sought to obtain an order of the court directing that his name, as police patrolman of the city of Chicago, be again placed upon the pay-roll of the police department of said city, from which pay-roll his name had been improperly and unlawfully stricken.

From the petition as amended it appears, after stating the incorporation of the city, the election of the mayor, the organization of the police department, including the office of superintendent of police, that defendant Kipley was in May, 1897, appointed such superintendent of police, and that said mayor and superintendent of police are still acting as such; that on June 14, 1887, the appellant was duly appointed to the office of police patrolman in Chicago, took the oath of office, entered upon his official duties as such police officer of said city, and served continuously from said date, as police patrolman, until May 31, 1895, "when he was by said superintendent of police assigned to duty as patrol sergeant of police;" that he served as such patrol sergeant until June 19, 1897, when by order of said superintendent appellant resumed his duties as such police patrolman of said city, "and hath remained such police patrolman from thence hitherto;" that during all his said service "he has never been charged with any misconduct or dereliction of duty in his said office nor has ever been reprimanded for misconduct or neglect of his duties as such officer;" that on December 18, 1897, by direction of said superintendent appellant took the civil service examination as to his qualifications as policeman of said city, which examination was conducted by the civil service commissioners under the Civil Service act of Illinois, in force March 20, 1895, and was "passed" upon such examination with a standing of 99 upon a scale of 100 and was No. 11 upon the list of eligibles; that on March 14, 1898, appellant's name was, by and under such direction, dropped from said pay-roll, and said superintendent "has caused the name

of your petitioner to be omitted and excluded from the pay-roll of the police department of the city of Chicago, and still so causes the name of your petitioner to be omitted from said pay-roll;" that by reason of said superintendent's aforesaid action, petitioner has not been paid any portion of the salary accruing and due to him as a police officer since March 14, 1898; that he has made demand upon the said city, said mayor and said superintendent that petitioner's name should be restored to the police pay-rolls of said city, to the end that he might draw his salary due him as a police officer, but that said defendants last above mentioned have, respectively, refused to comply with said demand and still do refuse so to do; that his salary was $83.33 per month, less one per cent thereof deducted by the police pension board of said city.

To this petition defendants filed an answer, in which they admit that said defendant, George R. McNeill, was on the 14th day of June, 1887, duly appointed police patrolman of the city of Chicago, as alleged in said petition, but the defendants say said appointment was made by the mayor, but without the concurrence and consent of the city council of Chicago; that said petitioner served continuously as a police patrolman in said city from the date of his appointment until the 31st of May, 1895, when he was by said superintendent appointed and assigned to duty as a patrol sergeant of police; that thereafter petitioner served continuously as such patrol sergeant of police until June 19, 1897, when, as defendants aver, he was reduced and appointed to the rank of police patrolman by the mayor and superintendent of police of the city of Chicago; that petitioner, on the 14th day of March, 1898, was "discharged by said Joseph Kipley, superintendent of police of the city of Chicago, by and with the concurrence and assent of the said Carter H. Harrison, mayor of said city of Chicago, and the civil service commission of said city of Chicago;" that he was discharged for the good of the service, and because, in the judgment of his superior officers, he was an inefficient officer, and because, prior to said

last mentioned date, there were upwards of one hundred more police patrolmen upon the pay-rolls of the department of police than had been appropriated for by the city council for said year, and on account of such deficiency in appropriation the said petitioner and upwards of one hundred more police patrolmen were discharged from the service of said city and from said department "in manner above stated;" that the following was the order under which said petitioner was discharged:

"City of Chicago, Department of Police.

*Joseph Kipley, Chief of Police.*

General order No. 10.                                    *March 14, 1898.*

"All patrolmen of the 21st, 22d, 23d, 24th, 25th, 27th, 28th, 29th and 30th precincts of the third division, not certified for appointment by the civil service commission, are hereby discharged from the force, to take effect at 5 P. M. this date. All patrolmen affected by the above order will report at the office of the civil service commission for certification, in the following order: 21st, 22d, 23d, 24th, 25th precincts at 5 P. M.; 27th, 28th, 29th and 30th precincts at 6 P. M.

Joseph Kipley, *General Superintendent.*"

The answer also admits that sections 1481 and 1482 of the Revised Code of Chicago, passed April 8, 1897, were in force March 14, 1898, and were as follows:

1481. "The superintendent shall have the management and control of all matters relating to the department, its officers and members.

1482. "Said superintendent shall have power to remove from the police force any police patrolman, and with the concurrence of the mayor he may remove or reduce in rank any officer or member of said department."

The answer also admits that an act of the legislature entitled "An act to regulate the civil service of cities," was adopted by the city of Chicago in the prescribed method and became in force in said city in August, 1895; that all the police patrolmen of the police department of the said city at the present time are civil service employees, each having been certified and appointed to his position pursuant to civil ser-

vice examination and in accordance with the Civil Service law and the rules of the civil service commission of Chicago, and that all positions of the police patrolmen appropriated for by the city council of Chicago are now filled by police patrolmen who have taken a civil service examination and been certified and appointed in pursuance to the civil service rules; that if petitioner is granted a writ of *mandamus* restoring him to the position of police patrolman he will crowd out and displace a civil service employee duly examined, certified and appointed.

To this answer a replication, such as is usually filed in chancery cases, was filed. A jury was waived and the cause tried upon the law and the facts before the court. Judgment was for the respondents, and the cause was appealed to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, and appellant brings the case here by appeal.

W. P. BLACK, and A. B. CHILCOAT, for appellant.

JOHN W. BECKWITH, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

By the affirmance of the judgment of the trial court by the Appellate Court the questions of fact were settled adversely to appellant.

There is no complaint as to the rulings of the trial court upon any matters arising in the trial, except the refusal of the trial court to hold as the law applicable to the case certain propositions submitted by appellant. These propositions are, in substance, that a police patrolman is an officer; that under the act for the incorporation of cities and villages such officer can only be removed by the mayor, and that he must report the same to the council within ten days, with his reasons, and that if the council, by a two-thirds vote of the yeas

and nays, disapprove such removal, the officer shall be restored; that only the mayor can remove, and he only for cause; that the superintendent of police has no power to remove a policeman, and that the ordinance set up in the answer giving him such power is ineffectual; that the order of superintendent Kipley of March 14, 1898, purporting to remove petitioner, was wholly ineffectual; that by the Civil Service act, when adopted by the city of Chicago and the offices and places classified, the entire police force came within its provisions and entitled to its benefits; that when the Civil Service act was adopted and the classification made, those entitled to its protection could not thereafter be removed except in the manner provided by the act, and that policemen who had been duly appointed and were in the service of the city when the act was adopted, when classified pursuant to the act as a part of the classified civil service, were embraced within the provisions of and entitled to the protection of the act.

Whether these propositions should have been marked "held" or "given" by the trial court must depend upon a consideration of them from two standpoints. If they were incorrect statements of the law they were properly refused; if, though correct propositions of law in the abstract or as applied to some conceivable case, they were not applicable to the case at bar for want of sufficient averments in the petition or lack of evidence upon which to predicate them, they were properly refused.

The petition in this case is in all material respects like the petition in *Stott* v. *City of Chicago,* 205 Ill. 281, and is for the purpose of restoring appellant to the pay-roll, from which he claims he has been illegally dropped. Following a line of undisputed authorities, we held in the *Stott case* that in order to entitle a petitioner to the right of *mandamus* the petitioner must show his clear legal right to the relief he seeks, and that where the right is predicated upon the claim by virtue of an office, and especially where compensation of an

officer is the matter in controversy, the petitioner must show that he is an officer *de jure* as well as *de facto*. In this case petitioner alleges that he "was duly appointed to the office of police patrolman in said department of police in said city of Chicago" on the 14th day of June, 1887, and that he served and held that office thence hitherto. He further alleges that in May, 1895, he was assigned by the superintendent of police to duty as a police sergeant, and by the order of said superintendent of police resumed his duties as police patrolman on June 19, 1897. So far as appears from the allegation of the petition, then, the petitioner received no re-appointment between the years 1887 and the time he alleges he was dropped from the pay-roll, and appellees in their answer admit that he was duly appointed police patrolman in 1887, but deny that he has ever since been such an officer or is such an officer now.

Assuming, as appellant contends, that his allegation and the admission in the answer are sufficient to establish his appointment to the office he claims, in 1887, and assuming, as he contends by the propositions of law submitted, that he was then an officer of the city and not a mere employee, are we, without either allegation or proof, to assume that he was re-appointed and re-qualified as such an officer every two years thereafter?

Section 1 of article 6 of the City and Village act declares who shall be city officers, and police patrolmen are not among them. Section 2 provides for the appointment or election of a city marshal and such other officers as may by said council be deemed necessary or expedient, but the determination of said city council that officers other than those specifically named in the charter are necessary or expedient is to be made by an ordinance passed by a two-thirds vote of all the aldermen elected. Section 3 of the same article provides that all officers, except as otherwise provided by the statute, shall be appointed by the mayor, by and with the advice and consent of the council; that the council define the duties and

powers of all such officers, and expressly provides that the term of office shall not exceed two years. How can it be said, then, that an allegation that appellant was appointed to an office in 1887, and that he qualified then and took upon himself the duties of that office and has ever since held the office, can be held, without any other allegation or any proof other than that he was appointed in 1887 and drew his salary from that time until 1898, sufficient to show his re-appointment, biennially, from 1887 to the time he claims he was illegally removed from office or dropped from the pay-roll?

Appellant does allege that the police department of the city of Chicago was created in 1881, under the head of "Executive department of the municipal government of the said city of Chicago," and that it was known as the police department, and embraced "the superintendent of police, a secretary to said superintendent, one captain of police for each police district, and such number of lieutenants, detectives, sergeants and police patrolmen as has been or may be prescribed by ordinance;" but he does not allege that there was, before or after 1881, any ordinance fixing the number or specifically authorizing the appointment of any person or persons to the office of police patrolman. He does set out the ordinance authorizing the appointment of the superintendent of police, and states that the ordinance required that he should be appointed biennially after 1881, and that Kipley was appointed superintendent under that ordinance; but his petition is silent as to any authority for his own appointment, and the proof is as void upon that question as are the allegations of his petition. In order to hold that appellant was in 1898, and still is, according to the allegations of his petition, a police patrolman, we must hold his allegation that he was duly appointed in 1887 equivalent to the allegation that either before or after 1881, when the police department was created, an ordinance was passed authorizing the appointment of some number of police patrolmen and that petitioner was within that number, and was appointed, and that

he qualified, and was re-appointed biennially thereafter to the same office, and that in each instance he qualified and took upon himself the duties of the office.

The *Stott case* was disposed of upon the pleadings and this case went to trial, and in such case, although the petition might be in some substantial respects deficient, yet if it were answered as in the case at bar, and the allegations of the petition admitted and the proof clearly and explicitly showed the right of the petitioner to the relief he sought, it might be held that the insufficient petition having been answered and the allegations of it admitted, the proof would supply the defects and the relief be granted. But without any proof other than that the petitioner was appointed in 1887 and served thence to 1898, and drew his pay, which is all the proof in the record as to his *de jure* right to any office, we think the contention of appellant that the court should assume all the things that have been pointed out that are neither alleged nor proved but that are necessary to establish his *de jure* right, is more than the mere averment that he was duly appointed in 1887 and since then drew his pay will warrant us in doing.

There was neither sufficient averment nor any evidence in the record that would require the trial court to make the holdings of law requested by appellant upon the theory that in 1898 he was a *de jure* officer, or was at the time of the trial a *de jure* officer, of the city of Chicago. The most that the evidence tends to show is, that he was a *de facto* officer until he was dropped from the pay-roll, and if he was not a *de jure* officer, although a *de facto* officer, it is entirely plain to us that he is not entitled to the extraordinary writ of *mandamus* to compel the restoration of his name to the pay-roll. If appellant was but a *de facto* officer he was holding his position, drawing his pay and exercising the functions of his office at the mere will of the city, and could be deprived of it at any moment the city might elect, by being refused his pay or a demand being made upon him to cease the performance of official duties.

In his petition the appellant also alleges the passage and adoption of the Civil Service act of 1895 by the city of Chicago, and that he was then a police patrolman, and that commissioners were appointed and the various places classified, and that he was entitled to the protection of that act but was removed without any charges having been preferred against him; that the civil service commissioners certified the pay-roll upon which his name appeared, for two years or more after the act was adopted; that in December, 1897, he took the civil service examination and passed with a grade of 99 on a scale of 100 and stood No. 11 on the eligible list, and that the superintendent of police dropped his name from that list on the pay-roll on the 14th day of March, 1898; and he claims that the city is estopped by these acts to deny that he is a police patrolman and protected by the Civil Service act. But in the same petition the appellant explains how the civil service commission came to certify the pay-roll, and states: "The first board of civil service commissioners, in 1895, at the request of the chief executive officers of the said city of Chicago and the comptroller of said city, adopted the practice of passing upon and certifying all pay-rolls of the employees of said city of Chicago, including the pay-rolls of all police patrolmen in the employ of said city, which practice has continued from thence hitherto." Surely, under such allegation as that, even if admitted, which it is not, by the answer, the court would not have been authorized to conclude that such certification of the pay-roll was an evidence that appellant was within the civil service.

But to this part of the petition which alleges that appellant was within the civil service, appellees answer, setting up certain ordinances of the city of Chicago, by which it is provided that the superintendent of police shall appoint the police patrolmen and that he can remove them at his will, and expressly deny that petitioner was ever certified for appointment by the civil service commission, and say that he was removed from the pay-roll and from his office on March 14,

1898, by order of Kipley, the superintendent of police. To this answer appellant filed a general replication, such as is usually filed in chancery cases, and which could not have the effect of being a traverse of the matters set up in the answer. We have held that in this class of proceedings the petition performs the office of a declaration and the answer that of a plea, and that the succeeding plea should be a common law replication and designated as a replication. *People* v. *Crabb,* 156 Ill. 155; *Chicago Great Western Railway Co.* v. *People,* 179 id. 441; *Mayor and City Council of Roodhouse* v. *Briggs,* 194 id. 435.

So far as the averments of the answer are concerned, then, they stand unquestioned. Appellant did not aver or introduce in evidence the classification and rules made by the civil service commission, and so upon that subject there was no evidence before the court. In his testimony the appellant says: "I took another examination about December 18, 1897, a few months before March 14, 1898, when they took the policemen under the civil service rule." He states, also, that after passing his examination he was placed upon the eligible list, and was ordered to report to the police station March 14 to be sworn in under the Civil Service act, and that when he did report, his name was taken off the list and he was not sworn in, but he received notice of his discharge. According to his own testimony, then, he was not yet taken into the classified service. By the express language of section 12 of the act to regulate the civil service of cities, it is only applicable to those officers who "shall have been appointed under said rules and after said examination." By his own showing appellant had not been appointed after his examination, but appointment was refused him, and the court did not err in refusing to give the holdings asked upon the theory that appellant was protected by the Civil Service act.

We think the judgment of the Appellate Court, under the record here disclosed, is right, and it is affirmed.

*Judgment affirmed.*