THE PEOPLE *ex rel.* Charles H. Gersch, Plaintiff in Error, *vs.* THE CITY OF CHICAGO *et al.* Defendants in Error.

*Opinion filed December 22, 1909.*

1. MUNICIPAL CORPORATIONS—*special charter provisions relating to police board of Chicago are not in force.* The provisions of the special charter of Chicago relating to a board of police and a police force, and the prohibition against removal except upon written charges to such board and an opportunity to be heard, are inconsistent with the provisions of the general Cities and Villages act concerning the election and appointment of officers, and are not now in force.

2. SAME—*adoption of general law by Chicago abolished all officers not saved by such law.* The adoption of the general law by the city of Chicago abolished all special charter offices not saved by the provisions of the general law, including the office of police desk sergeant, if that office existed under the special charter.

3. CONSTITUTIONAL LAW—*right to unearned salary is not property.* So long as a municipal officer occupies his office and performs its duties he is entitled to draw the salary provided therefor; but his right to future unearned salary is not property, and his removal from office is not, as to such unearned salary, a deprival of property, such as is forbidden by State and Federal constitutions.

4. CIVIL SERVICE—*act did not protect from removal officers appointed under old system.* Section 12 of the Civil Service act, as

242—36

it existed in 1898, protected from removal, except upon written charges and for just cause, officers appointed under the rules of the civil service commission, but it gave no such protection to officers appointed under the old system, and the courts are not authorized to add to the statute by extending protection to such officers.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

A. B. CHILCOAT, for plaintiff in error.

EDWARD J. BRUNDAGE, Corporation Counsel, (ROBERT R. JAMPOLIS, of counsel,) for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 2, 1909, Charles H. Gersch filed his petition in the circuit court of Cook county praying for a peremptory writ of *mandamus* against the city of Chicago and its officers having charge of the police department, directing that his name as one of the police desk sergeants in the police force of said city be placed upon the pay-roll of police desk sergeants, from which he alleged that his name had been illegally removed in 1898, eleven years before filing the petition. The court sustained a demurrer to the amended petition, and the petitioner having elected to stand by said petition it was dismissed at his costs. The record has been certified to this court in return to a writ of error sued out under the claim that the petitioner was deprived of property rights without due process of law, in violation of section 2 of article 2 of the constitution of this State, and was denied the equal protection of the law, in violation of the fourteenth amendment to the constitution of the United States.

The petition recites at some length the provisions of the act of February 13, 1863, revising the charter of the city of Chicago, and the amendatory act of February 16,

1865, relating to a police board, a superintendent of police and other officers of the police department. These acts have no relation to the controversy, for the reason that on April 23, 1875, the city of Chicago adopted the general act providing for the incorporation of cities and villages, approved April 10, 1872, and thereby all offices existing under the special charter and not saved by the general act were abolished. The only officers provided for by the general act are a mayor, aldermen, a city clerk, city attorney and city treasurer, and other officers deemed necessary or expedient can only be created by ordinance, in the discretion of the city council. By the general act all laws in conflict therewith are declared to be no longer applicable, except so far as laws and parts of laws not inconsistent with the provisions of the general act continue in force and applicable by virtue of section 6 of article 1. The provisions of the general act for the election of certain specified officers, and the further provisions that the city council may, in its discretion, provide by ordinance for the election by the legal voters or the appointment by the mayor, with the approval of the city council, of certain other specified officers and such other officers as may be deemed necessary or expedient, and that the term of such officers shall not exceed two years, are clearly inconsistent with the provisions of the special charter relating to a board of police and a police force and the prohibition against removal except upon written charges to such board and an opportunity to be heard in defense. The adoption of the general act by the city of Chicago determined the tenure of all officers under the special charter except those named in the act to be elected by the people. *Crook* v. *People ex rel.* 106 Ill. 237; *Bullis* v. *City of Chicago,* 235 id. 472.

There is much argument that the office of police desk sergeant was created by the acts of the legislature in enacting and amending the charter of the city; that the office

legally existed, by virtue of the statute, at the time of the adoption of the Civil Service act, and that petitioner, as desk sergeant, was a State officer, with such powers and duties as the statute conferred upon him. If the office of desk sergeant was created by the legislature, as counsel contends, it was abolished by the same authority in the enactment of the general law.

The material facts alleged in the petition and admitted by the demurrer are as follows: On June 28, 1875, the city council passed an ordinance establishing and creating a department of the municipal government to be known as the department of police. It created the office of city marshal, to be appointed by the mayor with the approval of the city council and to be head of the police department, and fixed his term at two years. It provided that the force should consist of one general superintendent of police, one deputy superintendent, four captains, twenty sergeants and the police patrolmen then in the employment of the city, which number might be increased or decreased from time to time. It provided that the deputy superintendent and sergeants might be removed and discharged or reduced in rank by the city marshal with the written concurrence of the mayor. On August 17, 1876, the petitioner was appointed to the office of police patrolman by the city marshal and entered upon the performance of his duties. Another ordinance was passed, which was approved April 18, 1881, establishing an executive department known as the department of police, and providing that it should embrace the superintendent of police, a secretary of the said superintendent, one captain for each district, and such number of lieutenants, detectives, sergeants and patrolmen as had been or might be prescribed by ordinance. It created the office of superintendent of police and fixed his term at two years, and provided that he should have power, with the concurrence of the mayor, to remove or reduce in rank any officer or member of said department. On April 2,

1895, the legal voters of the city adopted the act entitled "An act to regulate the civil service of cities," and on July 1, 1895, the mayor proclaimed the act to be in full force and effect in said city, and civil service commissioners were appointed, who classified all persons in the uniformed police force as division D. From August 17, 1876, until July 1, 1893, the petitioner was a police patrolman, and on July 1, 1893, he was promoted to the office of patrol sergeant and acted in that capacity until June 1, 1895, when he was promoted to the office of police desk sergeant, and continued in the discharge of the duties of that office until March 22, 1898. At the time of the classification by the civil service commissioners he was a desk sergeant in grade 4 of division D in class A, at an annual salary of $1200, and was carried on the pay-roll and entitled to pay as such desk sergeant. On March 22, 1898, Joseph Kipley, as superintendent of police, directed that the name of the petitioner be dropped from the pay-roll of police desk sergeants and he was reduced to the rank of police patrolman, which was done without charges preferred against the petitioner or any trial of any charges, and he has since been excluded from said pay-roll of desk sergeants. On March 21, 1903, within one day of five years after the name of the petitioner was dropped from the pay-roll as a desk sergeant, he filed a petition for *mandamus* to compel a restoration of his name to the roll, and that action was kept alive on the docket in the law calendars until July 16, 1908, at which time the suit was dismissed, on motion of the attorney for the defendants, without the knowledge or consent of the petitioner. This suit was begun within one year thereafter.

The ground alleged for suing out the writ of error from this court is, that the right of the petitioner to receive the compensation provided to be paid to a police desk sergeant is a property right, and that a deprivation of such right by his removal from office was a violation of the

constitution of this State and of the United States. While the petitioner alleges that he was promoted to the office of police desk sergeant on June 1, 1895, he does not allege any re-appointment at the expiration of two years, which is the term fixed by law for offices created by ordinance. But waiving that question and the question whether the petition shows that such an office as desk sergeant was ever created, and assuming that the petitioner was in office as a desk sergeant, he was merely deprived of that office by the act of Kipley. It is true that so long as the petitioner occupied the office of police desk sergeant and performed its duties he was entitled to draw the salary provided therefor, but an officer has no property right either in his office or the salary attached thereto. That question was decided in the case of *Donahue v. County of Will,* 100 Ill. 94. Donahue had been removed from the office of county treasurer of Will county by the board of supervisors. He claimed that the provision of the bill of rights that no person shall be deprived of life, liberty or property without due process of law prohibited his removal in that way, but the court held that no person can own or have title to a governmental office; that an officer has the legal right to receive the emoluments that he earns so long as he remains in office, but the prospective salary is not property, but is like daily wages unearned and which may never be earned. The doctrine that the future salary that would be earned if an officer should remain in office is not property, and that the right to compensation grows out of the rendition of services and not of any contractual relation, was afterward affirmed in *People ex rel. v. Kipley,* 171 Ill. 44, *City of Aurora v. Schoeberlein,* 230 id. 496, and *People ex rel. v. City of Chicago,* 234 id. 416. The petitioner was not deprived of any property right by his removal.

The only ground upon which it is contended that the petitioner had a right to have his name restored to the pay-roll is that he came within the protection of the Civil

Service act, and he not only failed to show this, but his petition showed that he was not within its terms. That act conferred some benefits upon members of the existing police force, and under its provisions examinations for promotion were limited to members of the next lower rank desiring to submit to an examination. (*Ptacek* v. *People*, 194 Ill. 125.) But there was no protection from removal except to those who had been examined and approved by the civil service commission. Section 12 of the act as it existed at the time of petitioner's removal, prohibited the removal of an officer appointed under the rules of the civil service commission except for just cause and for reasons given in writing to the commission and with an opportunity to be heard, but it did not prohibit the removal of others without written charges or a hearing. *McNeill* v. *City of Chicago*, 212 Ill. 481; *Kenneally* v. *City of Chicago*, 220 id. 485.

It is earnestly contended that although by the language of the act the prohibition against removal without charges and a hearing was limited to those appointed after examination in accordance with the rules adopted by the civil service commission, the court ought to extend the act to embrace others not so appointed, on account of the purpose of the law to establish a merit system. Assuming that the purpose of the act was, as stated by counsel, to bring to an end the use of public office as the spoils of political supremacy, it does not follow that the legislature intended to give protection to those officers appointed under the previous system. The legislature may have seen fit to leave those appointed under the superseded system subject to removal by the appointing power, and at any rate the act gave them no protection against removal in that way. The courts are not authorized to change or add to the provisions of the statute.

The court did not err in sustaining the demurrer, and the judgment is affirmed.    *Judgment affirmed.*