PERRY H. SMITH, Jr. *et al.*

*v.*

THE CHICAGO AND WESTERN INDIANA RAILROAD COMPANY.

*Filed at Ottawa September 27, 1882—Rehearing denied March Term, 1883.*

1. EMINENT DOMAIN—*the petition—its office and effect.* The statute having determined specifically what facts must appear on the face of the petition, in a proceeding under the Eminent Domain act, the court or judge is powerless to take any action in the premises until a petition is filed containing the statutory requirements, for it is by the petition jurisdiction is obtained of the subject matter.

2. SAME—*what petition must contain, to confer jurisdiction.* Every petition, properly framed, must contain all the statutory requirements, and will therefore, of necessity, show, in every case where such petition is sufficient to confer jurisdiction, the authority of the company seeking the condemnation to take the specific land sought to be taken, and the object or purpose for which it is required; and from this statement of facts it must clearly appear the use for which the land is sought to be condemned is a public one.

3.  SAME—*answer to petition for condemnation, not proper.*    There is no rule of law or practice authorizing the filing of an answer of any kind to a petition for the condemnation of land under the Eminent Domain act, and it is not the proper practice to permit one to be filed in any case.    If one is filed, the court may properly have the same stricken from the files.    Hence, there is no error in striking out any portion thereof.

4.  SAME—*the truth of the facts necessary to a condemnation may be questioned without written pleadings.*    If the truth of any of the averments of the petition may depend upon the existence or non-existence of facts not appearing upon the face of the petition, and hence their truth or falsity is open to extrinsic proofs, this proof may be made on the part of the land owner as well without an answer as with it, for the inquiry in such case will be directed to the truth or falsity of the petition.

5.  SAME—*what land is necessary—how and by whom to be determined.*    Where the description of the land and the purpose for which it is sought to be taken are stated in the petition, as they must be in every case, whether the land is reasonably necessary for the purpose stated depends mainly upon the facts thus stated in the petition.    But the court in passing upon this question, as it must before submitting the question of damage or compensation to the jury, should take into consideration the section of the country and the particular locality in which the improvement is to be constructed,— whether in an obscure country village, or in a great commercial center; and acting upon its own knowledge of the commerce and business necessities of the country, must, upon the facts stated in the petition, determine this question for itself.    The jury impaneled can find no fact except what is just compensation to the owner.

6.  The law does not contemplate that when the petitioner has brought itself within the provisions of the statute, the right of condemnation can be defeated by simply showing, in the opinions of witnesses who have no interest in or connection with the objects of the proceeding, that the land sought to be condemned is not necessary for the purpose stated.

7.  Every company seeking to condemn land for a public improvement must, in a modified degree, be permitted to judge for itself as to the amount that is necessary for such purpose.    This right is subject to all constitutional and statutory restrictions, and to the further limitation that the courts are clothed with ample power to prevent any abuse of the same.

8.  If the court can see from the facts stated, and its general knowledge of the locality and the public wants, that the lands sought to be taken are manifestly in excess of what is reasonably necessary for the purpose stated in the petition, it will be fully warranted in denying the application,—otherwise it will not.

9.  SAME—*of granting a new trial.*    Where the evidence is conflicting, in a case for the condemnation of land, as to the damages and compensation to be paid to the owners, and consists chiefly of the opinions of witnesses, some

of whom sustain the finding and others do not, this court will not feel justified in reversing unless it is able to say the verdict is clearly against the weight or preponderance of the evidence.

10. INSTRUCTION—*as to the weight to be given to witness' testimony.* While a court may state, in a general way, what facts appearing in evidence may be taken into consideration in determining the weight to be given to witness' testimony, it, in doing so, should always, and particularly in cases where the evidence is conflicting and nearly balanced, carefully guard against the use of any expression indicating or tending to indicate the extent of the weight to be given to such facts. While it is true it is the duty of the jury to consider such facts, after all it is left to them to say what credit the witness is entitled to receive.

11. It is not proper for the court to single out some particular fact as affecting the value of the opinions of a particular witness or class of witnesses in a case where opinions are allowed, and then tell the jury that the opinions of such witnesses should not be permitted or "allowed to counterbalance or overcome the opinions" of witnesses not affected by the fact thus singled out, and an error in that regard is not cured by adding that such is the rule other things being equal.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Mr. FRANCIS H. KALES, for the appellants:

The railroad company proceeded to condemn more property than it showed a necessity for, in this case. There is no law in this State making the corporation the final judge of the quantity of land necessary to a given purpose. It can not conclude the land owner by its own mere assertion. Therefore the court erred in striking out that portion of respondent's answer which made this an issue. *Booker v. Venice and Carondelet R. R. Co.* 101 Ill. 333; *Rennselaer R. R. Co. v. Davis*, 43 N. Y. 137.

It is not proper to arrive at the value of the property taken by a comparison of opinions of the value of it and other property. *Dana v. Fiedler*, 12 N. Y. 40; *Gouge v. Roberts*, 53 id. 619; *Blanchard v. Steamboat Co.* 59 id. 300; *Chandler v. Jamaica Pond Co.* 122 Mass. 305.

The usual mode of proving value is by a general question, without referring to actual sales, leaving that to the cross-

examination as a test of the witness' knowledge. *Lafayette R. R. Co.* v. *Winslow,* 66 Ill. 219; *Illinois R. R. Co.* v. *Van-Horn,* 18 id. 257; *Snow* v. *Boston R. R. Co.* 65 Maine, 230; *Dwight* v. *Hampden,* 11 Cush. 201; *Pennsylvania R. R. Co.* v. *Bunnell,* 81 Pa. St. 414.

The fifth instruction, concerning the opinions of witnesses in estimating value, was misleading, and the last clause thereof, seeking to cure the infirmity, is equally objectionable. That clause seeks to limit the principle before announced to cases where, "in other respects, the witnesses were of equal credibility, knowledge, information and experience."

Mr. CHARLES M. OSBORN, for the appellee, contended, from the facts, that the land sought to be condemned was necessary for the purpose indicated. The clause in the answer was properly stricken out.

It seems to be well settled that where the petitioner has the right to condemn, and the petition states the necessity of the exercise of that right within the terms of the statute, the courts will not inquire into the necessity for the exercise of that power. *Booker* v. *Venice and Carondelet R. R. Co.* 101 Ill. 333. See, also, *In re New York* v. *Kip,* 46 N. Y. 553; *New York Central R. R. Co.* v. *Hudson River R. R. Co.* 77 id. 259; *Chicago, Rock Island and Pacific R. R. Co.* v. *Town of Lake,* 75 Ill. 336; *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana R. R. Co.* 97 id. 523; *North Missouri Bank* v. *Galt,* 28 Mo. 543; *Mills* v. *County of St. Clair,* 2 Gilm. 197; *City of Galesburg* v. *Hankinson,* 75 Ill. 153; *Buffalo and New York R. R. Co.* v. *Brainard,* 9 N. Y. 100; *Miller* v. *Fowler,* 53 id. 62; *Wier* v. *St. P. and T. F. R. R. Co.* 18 Minn. 155; *Parks' Appeal,* 64 Pa. St. 137.

Evidence of particular sales are now admitted in this and almost every other State, not only on cross-examination, but on direct examination, as original evidence, tending to throw light upon the market value of the property in question.

*Chicago and Western Indiana R. R. Co.* v. *Marony*, 95 Ill. 182; *St. Louis, Terre Haute and Vincennes R. R. Co.* v. *Haller*, 82 id. 211; *Jones* v. *Chicago and Iowa R. R. Co.* 68 id. 384; *Shattuck* v. *Stoneham R. R. Co.* 6 Allen, 115; *Edmunds* v. *Boston*, 108 Mass. 535; *Chandler* v. *Jamaica Pond Co.* 102 id. 305; *Searl* v. *Lack. and D. R. R. Co.* 33 Pa. St. 63.

The instructions were correct.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The Chicago and Western Indiana Railroad Company, on the 31st of March, 1881, filed in the county court of Cook county its petition, praying for the condemnation of certain real estate therein specified, and making Perry H. Smith, Emma Louisa Smith, Anna R. McCormick, and Lucy N. McCormick, the appellants, parties thereto. The petition alleges that it has located the line of its road in accordance with its charter, and that it intersects and passes over the said real estate, and that the company "desires to appropriate and use the said property for the purpose of building and constructing its said line of railroad aforesaid, and that said property is necessary for the right of way, side-track, stations and appurtenances required by petitioner in constructing and operating its said road." The court allowed the petition, and caused a jury to be impaneled, and sworn to assess and report the appellants' damages. The damages, as assessed and reported by the jury, amounted altogether to $35,477.76, upon the payment of which amount to the county treasurer, for the use of appellants, the company was authorized to enter upon and take possession of the premises in question,— from which order the appellants have prosecuted an appeal to this court, and a reversal is asked upon several grounds.

It appears from the record, that pending the proceeding in the county court, and before the submission of the cause to the jury for assessment of the damages, the appellants filed a formal answer to the petition, setting forth, among

other things, that the petitioner, prior to the institution of the condemnation proceedings, had leased its road, franchises, etc., to the Wabash, St. Louis and Pacific Railway Company, and also that the real estate described in the petition "is not required by the said petitioner for the purposes of its incorporation or the transaction of its business, or for its depots, station buildings, machine repair shops, or for right of way, or for any other lawful purpose connected with or necessary to the building, operating or running of said road by the said Chicago and Western Indiana Railroad Company." Upon an exception to these portions of the answer they were stricken out by the court, and it is claimed by appellants that this was error.

We are aware of no rule of law or of practice authorizing the filing of an answer of any kind to a petition for the condemnation of land under the Eminent Domain act, nor do we think it the proper practice to permit one to be filed in any case, and the court might therefore with propriety have stricken the entire answer from the files; and if this might have been done, it follows there was no error in striking out a portion of the answer, as was done. The proceeding is purely statutory, and we look in vain through the various provisions relating to it for something to warrant such a practice. The 1st section of the statute contains the constitutional restrictions upon the right to take private property in any case, and is in these words: "That private property shall not be taken or damaged for public use without just compensation, and that in all cases in which compensation is not made by the State in its corporate capacity, such compensation shall be ascertained by a jury, as hereinafter prescribed." The 2d section provides, "that in all cases where the right to take private property for public use without the owner's consent, or the right to construct or maintain any public road, railroad, plank road, canal, or other public work or improvement, * * * has been heretofore or shall

hereafter be conferred by general law or special charter upon any corporate or municipal authority,  *  *  *  and the compensation to be paid for  *  *  *  the property sought to be appropriated  *  *  *  can not be agreed upon by the parties interested,  *  *  *  it shall be lawful for the party authorized to take  *  *  *  the property so required *  *  *  to apply to the judge of the circuit or county court, either in vacation or term time, where the said property, or any part thereof, is situate, by filing with the clerk a petition setting forth, by reference, *his or their authority in the premises, the purpose for which said property is sought to be taken,* *  *  *  *a description of the property, the names of all persons interested therein, as owners or otherwise, as· appearing of record,*  *  *  *  *and praying such judge to cause compensation to be paid to the owner, to be assessed.*"    The 3d section relates to filing petitions in vacation; the 4th section, to service of process; the 5th, to the hearing of causes, and the practice in such cases; the 6th, to the mode of selecting juries for assessments in vacation; the 7th, to the impaneling of the jury, and the mode of filling up the panel when exhausted; the 8th, to the oath of the jury; the 9th, to the form of the verdict, and a view of the premises by the jury; the 10th, to the judgment; the 11th, to cross-petitions; the 12th, to appeals; the 13th, to the appeal bond, and use of premises pending an appeal; the 14th, to the payment of the damages; the 15th, to the entry of the verdict by the court; and the 16th and last, to the repeal of former laws on the subject.

Thus it will be seen, that although the statute is very minute in all its details, specifically setting forth every step to be taken in the progress of a cause, from its inception to its final determination, yet it nowhere contains the slightest allusion to an answer by the defendants.    Nor can we, on general principles, conceive the least necessity for such a pleading.    The statute having determined specifically what

facts must appear on the face of the petition, the court or judge is powerless to take any action in the premises until a petition is filed containing the statutory requisites, for it is by the petition jurisdiction is obtained of the subject matter of the suit. Every petition, properly framed, must contain all the statutory requirements, and will therefore, of necessity, show, in every case where such petition is sufficient to confer jurisdiction, the authority of the company to take the specific land sought to be taken, and the object or purpose for which it is required; and from this statement of facts it must clearly appear the use for which it is sought to be condemned is a public one. If the right to take the land at all must affirmatively appear upon the face of the petition itself, as we hold it must, what necessity is there for an answer at all?

If it be suggested the truth of some of these averments might depend upon the existence or non-existence of certain facts not appearing on the face of the petition, and hence their truth or falsity would be open to extrinsic proofs, we submit, conceding this to be so for the purposes of the argument, this proof might be made, upon the part of the land owners, just as well without an answer as with it, for the inquiry in such case would be directed to the truth or falsity of the petition. But it is difficult to conceive of a case, where the petition is framed in conformity with the statute, in which such a question could be raised by extrinsic proofs, for when the description of the land, and the purpose for which it is sought to be taken, are stated in the petition, as they must be in every case, whether the land is reasonably necessary for the purpose stated must, of necessity, depend mainly upon the facts thus stated in the petition. Of course the court, in passing upon this question, as it necessarily must, before submitting the question of damages or compensation to the jury should take into consideration the section of country and the particular locality in which the public

improvement is to be constructed,—whether in an obscure country village, or a great commercial city, like Chicago; and acting upon its own knowledge of the commerce and business necessities of the country, must, upon the facts stated in the petition, determine this question for itself. It certainly was never contemplated by the legislature that where the petitioner has brought itself within the provisions of the statute, the right of condemnation can be defeated by simply showing, in the opinions of witnesses who may have no interest in or connection with the objects of the proceeding, that the land sought to be condemned is not necessary for the purpose stated. Every company seeking to condemn land for a public improvement must, in a modified degree, be permitted to judge for itself as to what amount is necessary for such purpose. This right, of course, is subordinate to all statutory and constitutional restrictions on the subject, and also to the further limitation that the courts of the State which are authorized to entertain applications of this character are clothed with ample power to prevent any abuses of this right by such companies. For instance, if in an obscure village a railway company, in the exercise of this limited right to judge for itself as to the amount of land necessary for its purposes, should attempt to condemn forty, or even twenty, acres of land for depot purposes, this would clearly be an attempted abuse of the right, and the court to which the petition was preferred would be fully warranted in denying the application. On the other hand, the law having authorized such companies to take private property for public use, when one, by a proper petition, has brought itself strictly within the provisions of the statute, and the court can see, from the facts stated, the land sought be condemned is not manifestly in excess of what would be reasonably necessary for the purpose stated in the petition, the court will not be authorized to interpose on the ground suggested. And when it is considered that lands thus taken can not be used

by such companies, or their assignees, for any other purposes than those for which they were condemned, it is manifest the rule which we have announced in this case affords ample protection to private rights.

Outside of the absence of any provision in the statute authorizing the filing of an answer, it is clear, from the oath to be administered to the jurors, they are not required to pass upon any questions except such as affect the matter of damages. The oath prescribed by the statute is in these words: "You, and each of you, do solemnly swear you will well and truly ascertain and report just compensation to the owner (and each owner) of the property which it is sought to take, * * * and to each person therein interested, according to the facts in the case, as the same may be made to appear by the evidence, and that you will truly report such compensation so ascertained; so help you God." It is clear, from the wording of this oath, if the jury were required to pass on any questions of fact raised by an answer, and not relating to the amount of compensation to be paid to the defendants in the petition, the jury would not be acting under oath as to such additional matters, for the oath, by its express terms, is confined to the question of compensation.

None of the errors assigned question the sufficiency of the petition to bring the case within the provisions of the statute, or the sufficiency of the proofs by which it is sustained. It only remains, therefore, to inquire whether any error intervened in the receiving or rejecting of evidence, the giving or refusing of instructions, or in the refusing to set aside the verdict and grant a new trial. With respect to the latter question, it may be disposed of in a few words. The evidence, as usual in cases of this character, was very conflicting, consisting chiefly of the opinions of witnesses, some of whom sustain the finding and others do not. Under these circumstances we would not be justified in reversing on the ground suggested, unless we were able to say the verdict is

clearly against the weight or preponderance of the evidence, and this we are unable to do.

The court, at the request of appellee, gave to the jury the following instructions:

"5.   The jury are further instructed, that while the opinions of witnesses are competent to be given in evidence on the question of the market value of the land proposed to be taken, yet that the weight which such evidence should have depends in some measure upon the knowledge, information and experience which the witnesses had of the prices at which actual *bona fide* sales had been recently made of similar property, (if it appears in evidence that there have been such sales,) and that the opinions of witnesses who had not such knowledge, information or experience ought not to be allowed to counterbalance or overcome the opinions of witnesses who had such knowledge, information or experience, if, in other respects, the witnesses were of equal credibility, knowledge, information and experience.

"6.   The jury are further instructed, that all facts which the jury shall find, from the evidence, touching the knowledge of each witness of recent *bona fide* offers for sales, and also of sales and rentals of similar and other property, even if not recently made, or if the property was remote in position, are elements tending to throw light upon the knowledge and experience of the witnesses, and the value of the opinions expressed by them as to the value of the property taken."

—To the giving of which the appellants excepted.   We are of opinion these instructions were calculated to mislead the jury, and that there is nothing in the other instructions given that relieves them of this objection.   While courts may properly state, in a general way, what facts appearing in evidence may be taken into consideration in determining the weight to be given to a witness' testimony, yet the court, in doing so, should always, and particularly in cases like the present,

where the evidence is conflicting and so nearly balanced, carefully guard against the use of any expression indicating or tending to indicate the extent of the weight to be given to such facts. These instructions were not sufficiently guarded in this respect. While it is the duty of the jury to consider such facts, after all it is left to them to say what credit the witness is entitled to. Nor do we think it proper for the court to single out some particular fact, as was done in this case, as affecting the value of the opinions of a particular witness or class of witnesses, and then tell the jury that the opinions of such witness or class of witnesses should not be permitted or "*allowed to counterbalance or overcome the opinions*" of witnesses not affected by the fact thus singled out. Neither do we think an instruction of this kind is cured by adding in the conclusion of it that such is the rule other things being equal, or words of similar import. The two instructions, considered as a whole, moreover, tend to direct the attention of the jury to the comparative merits of particular witnesses or classes of witnesses rather than to the real question in controversy,—namely, the amount of compensation to be ascertained, and reported by them to the court. In addition to this, their probable tendency was to lead the jury to suppose there are certain artificial and arbitrary tests by which the value of witness' opinions is to be determined, and in their efforts to apply such supposed tests injustice may have been done the appellants. Upon the whole, we think these instructions should not have been given, and that it was error to do so.

The judgment of the court below is therefore reversed, and the cause remanded for further proceedings in conformity with the views here expressed.

*Judgment reversed.*

Mr. JUSTICE WALKER: Had this petition been filed in the circuit court, according to uniform practice all pleadings must be in writing, unless dispensed with by statutory requirement.

The practice is uniform that all issues in original cases in that forum shall be in writing. This statute has not changed the practice, and had. the proceeding been instituted there, the pleadings should have been in writing, and the practice indicated in the opinion would be incorrect. As illustrating this necessity, the legislature has provided that on appeals from justices of the peace the trial in the circuit court shall be *de novo*, and without pleadings in writing. The legislature proceeds on the supposition that without such a provision the court would have required written pleadings.

I also hold that railroad companies do not have the right to take so much land as they may choose, but only so much as is necessary for corporate purposes, and that this is a question of fact upon which the owner has a right to have an issue formed, and a constitutional right to have it determined by a jury. I can not, therefore, concur in the foregoing opinion.