THE VILLAGE OF DEPUE, Appellee, vs. CHARLES BANSCH-
BACH, Appellant.

*Opinion filed June 22, 1916.*

1. JUDICIAL NOTICE—*court takes judicial notice of provisions of
general statute.* The courts of Illinois will take judicial notice of
the provisions of a general statute, such as the general law for the
incorporation of cities and villages and of the powers of municipal
corporations organized thereunder.

2. EMINENT DOMAIN—*when petition shows authority by village
to condemn land.* A petition which alleges that the petitioner is a
village organized under the general Incorporation act and that it
has adopted an ordinance for the creation of a public park on cer-
tain lands shows sufficient authority to maintain the petition to
condemn the lands for park purposes.

3. SAME—*extent to which courts will inquire into necessity for
condemnation.* If the petitioner in a condemnation proceeding has
statutory power to condemn land for the purposes stated in the
petition, courts will not inquire into the propriety or necessity of
the exercise of the power, although they may inquire into the pro-
priety of taking the particular property and whether the amount
proposed to be taken is excessive.

4. SAME—*incorporated village may establish park before ques-
tion of raising funds has been voted on.* A village incorporated
under the Cities and Villages act has power to establish a public
park without a previous vote of the people on the question of rais-
ing funds, as the act of 1899, containing such requirement, applies
to cities and not to villages.

5. SAME—*when defendant cannot urge as error the striking of
objections from files.* Striking from the files certain objections
raised on the defendant's motion to dismiss a condemnation peti-
tion cannot be urged as error on appeal, where the petitioner, as
a part of its case, introduced evidence opening up the questions
covered by the objections, thereby affording the defendant an op-
portunity to support the objections by proof, which he made no
effort to take advantage of.

6. SAME—*defendant cannot object that village has not raised
funds at time his land is condemned.* The fact that the petitioner
in a proceeding to condemn land for a park has not levied a tax
or otherwise provided the funds to pay for the land is not a valid
objection to the proceeding, as the only concern of the defendant,
in that respect, is that the funds be provided by the time the peti-
tioner is allowed, by the judgment, to take the land.

7. SAME—*village authorities have a broad discretion in determining how much land is needed for a park.*  Village authorities have a broad discretion in determining how much land shall be taken for a public park and may anticipate the future needs of the municipality, and their action in that matter will not be interfered with by the courts except where there is a clear abuse of discretion.

8. MUNICIPAL CORPORATIONS—*when an ordinance need not contain a provision for publication.*  Under the laws in force in 1869 an ordinance fixing the boundaries of a town was not required to contain a provision as to the time when it should take effect or for its publication, as the statute fixed that period at ten days after due publication.

9. SAME—*what will not invalidate ordinance.*  If an ordinance fixing the boundaries of a town was actually published, the fact that after the passage of the ordinance an unnecessary provision was added by resolution, thereby being invalid, would not invalidate the other provisions of the ordinance.

10. SAME—*the presumption is that municipal officers have performed the duties required by law.*  The presumption is in favor of the regularity of municipal action and that the municipal officers have performed the public duties enjoined upon them by law.

11. SAME—*when it will be presumed that ordinance was published.*  Where nearly half a century has passed since the passage of an ordinance fixing the boundaries of a town, and the evidence shows that the municipal authorities knew the ordinance must be published, and the authorities of the town, and of the village into which the town was subsequently incorporated, as well as the inhabitants, have always regarded the boundaries as being fixed by the ordinance, it will be presumed that the ordinance was published though no record of that fact can be found.

12. JUDGMENTS AND DECREES—*written order signed by judge not necessary to give validity to judgment.*  In a condemnation proceeding, which is a proceeding at law, the judgment becomes effective as soon as it is pronounced by the court, and no written order signed by the judge is necessary to give validity to the judgment.

13. SAME—*when the proceedings after judgment may be disregarded.*  If the record shows that judgment in a condemnation proceeding was pronounced on a certain date, subsequent proceedings with reference to the form of the judgment to be entered by the clerk, had after the cause had been removed to the Supreme Court by appeal, may be disregarded and will not affect the validity of the judgment.

14. SAME—*draft of judgment signed by judge does not prevail over the record.*  A draft of a condemnation judgment signed by the judge will not prevail over the minutes of the judge or clerk

and the files of the cause with respect to the date the judgment was rendered, and if it does not correctly set forth the proceedings and judgment the clerk may write them up from the minutes of the judge or his own minutes.

APPEAL from the County Court of Bureau county; the Hon. JAMES R. PRICHARD, Judge, presiding.

WATTS A. & CAREY R. JOHNSON, for appellant.

JOSEF T. SKINNER, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This is an appeal by Charles Banschbach from a judgment of the county court of Bureau county rendered in a condemnation proceeding instituted by appellee, the village of Depue, awarding him the sum of $3885 as compensation for lands taken and damaged for park purposes by the village. The petition was filed by the village in vacation after the June term, 1915, of the court, to condemn a strip of land containing 28.86 acres in the village, bordering upon what is known as Lake Depue. Several parties were made defendants to the petition as owners or lessees of the property in question. Summons was issued and served upon all defendants, who appeared and entered their motion to dismiss the petition, assigning numerous reasons as grounds for the dismissal of the petition. A hearing was had upon this motion and it was denied. Appellant excepted to the order denying the motion and took a bill of exceptions of the proceedings had at that time. A jury was then empaneled and a trial had on the question of the value of the land to be taken and damaged by the proposed improvement. The jury returned a verdict awarding appellant $3660 for land taken and $225 as damages for land not taken, and to the other defendants, none of whom are appealing, the sum of $6055, making the total damages awarded for the land taken and damaged $9940. The record contains no bill of

exceptions of the proceedings had before the jury, and that part of the proceedings in the lower court is not before us for review. Motions for a new trial and in arrest of judgment were made and overruled and judgment was entered on the verdict, and the petitioner was allowed until May 1, 1916, in which to exercise its election to pay for and take the property. From that judgment the appellant has prosecuted his appeal to this court.

The village of Depue is located in Bureau county, on what is known as Lake Depue. The territory comprising the village was originally organized as the town of Trenton prior to 1869 and subsequently became the town of Depue, and thereafter, in 1888, was organized as the village of Depue under the general Incorporation act for Cities and Villages of April 10, 1872. At the present time it has a population of approximately 2600 persons. Its principal industry is the Mineral Point Zinc Company, which has a large plant there and employs in the neighborhood of 1000 men. There is no park within its corporate limits, but only a small tract of land on which is located the plant of the city water-works, which tract is too small and not well suited for park purposes. All of the lands in question are situated in the south half of section 35, in township 16, north, range 10, east, in Bureau county, and border on Lake Depue. The lands are low and swampy, about one-third covered with water, and so situated that they are not well adapted for building purposes. At the time of the institution of the proceedings in question they were used principally for pasture and grazing purposes. On April 1, 1915, the village adopted an ordinance providing for the creating, establishing, laying out and opening of a public park upon the lands in question. Section 1 of the ordinance provided that a public park should be created, established, opened and laid out within the corporate limits of the village of Depue, composed of the lands in question, and section 2 provided that the expense of creating, establishing,

opening and laying out such park should be paid for by general taxation. Thereafter the board of local improvements was directed, by resolution, to negotiate with the owners of the property for the purchase of the same. It reported to the village board that it had been unable to agree with the owners of the property as to the amount of compensation to be awarded for the lands to be taken and damaged by the proposed improvement. Thereupon a resolution was adopted directing the institution of this proceeding. On August 12, 1915, a petition was filed to condemn the lands under the Eminent Domain act, alleging the organization of the village of Depue as a municipal corporation under the act of 1872 for the incorporation of cities and villages; the adoption of the ordinance directing that a park be opened and laid out within the corporate limits, composed of the lands in question, a copy of the ordinance being attached to and made a part of the petition; that in order to carry out the provisions of the ordinance it would be necessary to take the property in question, which is needed and required for the purpose of creating, establishing, opening and laying out said park as set forth in the ordinance, and that petitioner has been unable to agree with the owners of the property as to the amount of compensation to be paid them for the property sought to be taken and appropriated to such use. The petition concluded with the usual prayer for summons, etc.

The principal objections urged are, (1) that the petition does not allege the authority by which the village seeks to condemn the property; (2) that there is no necessity for the creation and establishment of a public park within the village; and (3) that the question of the expenditure of the funds of the corporation for park purposes was not submitted to a vote of the people of such village at an election, as provided by section 1 of the act of 1899 authorizing cities to provide and maintain parks, etc. (Hurd's Stat. 1913, p. 449.)

The petition alleges the village of Depue is organized as a municipal corporation under the general Incorporation act for Cities and Villages of 1872, and alleges the adoption of an ordinance by it providing for the improvement. This was sufficient. By paragraph 7 of section 1, article 5, of that act, (Hurd's Stat. 1913, p. 270,) cities and villages are authorized "to lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same." The act is a public act, and the courts are required to take judicial notice of its provisions and of the powers of municipal corporations organized under such act. The power to acquire property for park purposes is expressly granted by that act, and for that reason the allegation in the petition that the village of Depue is organized as a village under that act and has adopted an ordinance providing for the creating and establishing of the improvement was sufficient to show authority in the petitioner to institute a suit to condemn lands for park purposes. *Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 154 Ill. 656; *City of Mound City* v. *Mason,* 262 id. 392.

The question of the propriety and necessity for a public park within the village was for its president and board of trustees and not the courts, and their decision in the matter is final. Where the power to condemn exists, the right to determine whether or not it shall be exercised is a legislative question, with which the courts have no concern, and they will not inquire into the propriety or necessity of the exercise of such right, (*County of Mercer* v. *Wolff,* 237 Ill. 74; *City of Paris* v. *Cairo, Vincennes and Chicago Railway Co.* 248 id. 213;) although they may inquire into the propriety of taking the particular property and as to whether or not the amount proposed to be taken is excessive. (*City of Chicago* v. *Lehmann,* 262 Ill. 468.) The petition alleges the necessity of taking the property in ques-

tion for park purposes, and in this respect its allegations are sufficient.

As to the further contention that no public park can be established until the question of raising funds for that purpose has been submitted to a vote of the people of the village, as provided by the act of 1899 enabling cities to establish and maintain parks, we are of the opinion that the act has no application to the case at bar for the reason the act, by its express terms, is confined to cities. While it is true, as held in *People* v. *Grover,* 258 Ill. 124, that the word "city" may include an incorporated town, and that in popular use the chief difference between a city and village is understood to be its size and population, it was also there pointed out that in determining what was intended to be included within the term when used in a statute it was frequently necessary to refer to the context of the act and the objects and purposes for which it was passed. An examination of the Cities and Villages act shows that in numerous instances acts have been passed in relation to cities which were not intended to apply to villages, while in other instances acts have been passed in relation to villages which were not intended to apply to cities, and that whenever it was intended that the act should apply alike to both cities and villages, the expression "cities, towns and villages" is used in the various provisions of such act. The provision in section 1 was not adopted as a part of the original Cities and Villages act. It was made the subject of a special act adopted in 1899. By its terms it is expressly limited to cities, and we find nothing in the context of the act which would warrant us in extending its provisions to villages. Where the language of an act is plain, clear and explicit and its meaning is neither doubtful nor ambiguous there is no room for construction, and the courts can neither add to nor subtract from the provisions of such act. "The courts are not authorized to change or add to the provisions of the statute." (*People* v. *City of Chicago,*

242 Ill. 561.) For these reasons we think the act cannot be held to apply to villages.

It is further insisted that the court erred in striking certain of appellant's objections, set forth in his written motion to dismiss the petition, from the files. The objections particularly pointed out in the argument are the fifth, to the effect that no ordinance was passed or adopted by the president and board of trustees of the village, as required by law; the fourteenth, to the effect that there was no necessity for the establishment of a public park in the village at the time the petition was filed; and the fifteenth, to the effect that no effort had been made to agree with appellant as to the compensation and damages to be awarded him for land taken and damaged, as required by the provisions of the Eminent Domain act. The fourteenth objection has already been answered. As to the other objections, while it is true, as contended by appellant, that a valid enabling ordinance providing for the improvement lies at the foundation of the proceeding, (*People* v. *Village of Hyde Park,* 117 Ill. 462,) and that a proceeding to condemn land for a public improvement to be paid for by general taxation must be had under the Eminent Domain act, (*Village of Norris* v. *Lyon,* 251 Ill. 457,) which contemplates that an effort shall be made to agree with the property owner as to the amount of compensation to be paid for the land taken and damaged by the improvement, (Hurd's Stat. 1913, chap. 47, sec. 2,) and that these objections are properly raised as preliminary questions by a motion to dismiss the petition, still we think the act of the court in striking these objections from the files in the present condition of the record was not such error as will warrant a reversal of this case. The petitioner, as a part of its case, introduced in evidence the ordinance providing for the improvement and a resolution of the village board adopted on July 19, 1915, directing three of its members, designated as the board of local improvements, to take all lawful steps in behalf of the village

necessary in order to agree with the parties interested as to the compensation to be paid for the property involved in this proceeding, and the report of such board of local improvements, made to the board of trustees of the village, that they had made all reasonable efforts to agree with the land owners as to the amount of such compensation and were unable to make any satisfactory arrangements with them as to such compensation. By the introduction of this evidence the petitioner opened up both the questions covered by these objections, and afforded appellant an opportunity of offering any competent evidence he desired upon the questions, but he made no effort to do so and offered no evidence upon either one of them. For these reasons he is not in position to now urge that the court erred in striking these objections from the files.

It is further urged that the proceedings were defective for the reason that no provision had been made for payment for the lands taken and damaged. The fact that no tax had been levied or provision made to raise funds to pay for the improvement is no concern of appellant. (*City of Chicago* v. *Sanitary District,* 272 Ill. 37.) He is not required to give credit to the municipality or part with his land until he is paid in full the compensation awarded him by the verdict of the jury and judgment of the court. (*City of Chicago* v. *Sanitary District, supra.*) Under the judgment entered, the village was allowed until May 1, 1916, to exercise its election and take and pay for the property. An ordinance had already been passed appropriating $11,000 for this purpose, and the village had ample time to raise the funds for that purpose by general taxation before it would be required to take the land by the terms of the judgment. It is immaterial to the rights of appellant that such funds were not in its treasury at the time this proceeding was instituted, so long as they are there at the time his lands are taken.

It is further insisted that certain of the lands in question are not within the corporate limits of the village. The evidence upon this question shows all of the lands in question are situated in the south half of section 35, in township 16, north, range 10, east, in Bureau county, and that on May 12, 1869, an ordinance was passed defining and fixing the boundaries of the town of Depue as including within its corporate limits all of the lands situated in said section 35. The ordinance contained no provision as to the time when it should take effect or for its publication. Thereafter, on May 28, 1869, a resolution was adopted by the town council that the ordinance be amended by adding a section to the effect that the same should take effect and be in force from and after its publication. There is nothing in the records of the village or of its predecessor, the town of Depue, to show the passage of the ordinance as amended on this latter date, or its due publication in a newspaper or by posting in three of the most public places in the town, as required by the law then in force. (1 Gross' Stat. 1869,—3d ed.—chap. 25, div. 1, par. 8.) The evidence further shows that thereafter, on November 26, 1878, the clerk of the town council of the town of Depue certified to the county clerk of Bureau county a list of the residents of the town of Depue upon whose lands were assessed corporate taxes for the year 1878, in which he certifies that the town of Depue includes within its corporate limits all of section 35, in township 16, north, range 10, east of the fourth principal meridian, as appears from the records of such town in his custody and keeping. The town of Depue subsequently became incorporated as a village under the Cities and Villages act of 1872, on July 2, 1888, but no village taxes appear to have been levied by it until the year 1907, ever since which time corporate taxes have been assessed upon the lands in question and the same have been paid by the respective owners of such lands without protest. The ordinance adopted on May 12, 1869, fixed the

boundaries of the town as including all of the lands in section 35, and it was not necessary to the validity of such ordinance that it contain any provision as to the time when it should take effect or for its publication. The statute fixed this at ten days after its due publication. If the ordinance was, in fact, published as adopted on May 12, with the invalid section attempted to be added thereto by the resolution of May 28, the publication of the same with such invalid provision would not have the effect of invalidating the valid portions of such ordinance. The law in force at that time made no provision for the manner in which evidence of the due publication of such ordinances should be preserved. The town records are silent on the question and nearly a half century has elapsed since the action in question was taken. The evidence shows that the municipal authorities knew that such ordinance required to be published, and that they passed a resolution directing the adding, as an amendment, of a provision providing for its publication as required by law. The presumption is in favor of the regularity of municipal action and that public officers have performed their public duties where there has been long acquiescence by the public and action by the corporate authorities recognizing the validity of such prior act. The evidence in the present case shows that at least since 1878 the authorities of the town of Depue, and its successor, the village of Depue, as well as the inhabitants of such territory, have recognized and treated such town and village as including within its corporate limits all of the lands in section 35. Under the circumstances we think this sufficient to warrant the indulgence of the presumption, after such lapse of time, that the municipal authorities performed their duties as provided by law and adopted and published the ordinance in the manner required by law, fixing the boundaries of the village of Depue.as including within its corporate limits all of the lands situated in section 35. 28 Cyc. 396; *City of Quincy* v. *Chicago, Burlington and*

*Quincy Railroad Co.* 92 Ill. 21; *Santa Rosa Railway Co.* v. *Central Street Railway Co.* 38 Pac. Rep. 986.

It is further urged that the court erred in refusing to require petitioner to file more definite plans, profiles and specifications of the proposed improvement, and that an excessive amount of land is attempted to be appropriated for park purposes. On the motion of the defendant the court required petitioner to file such plans, profiles and specifications as it could of the proposed improvement, in response to which it filed a plat showing the land proposed to be taken, and a resolution was duly adopted by the municipal authorities of the village setting forth that it was their intention to use the property for every purpose for which the property might lawfully be used as a park. It has been held that plans and specifications are not indispensable in a condemnation proceeding, (*Alton and Southern Railroad* v. *Vandalia Railroad Co.* 271 Ill. 558,) and we think the plat and resolution filed in this case were as full and complete as reasonably could be under the circumstances, and sufficient to furnish the appellant with all facts necessary to enable him to introduce evidence as to the consequential damages, if any, suffered by his land not taken by the making of such improvement. As to the amount of land appropriated, in matters of this kind the municipal authorities are vested with a broad discretion in determining the amount of land that shall be taken. They have a right to, and should, anticipate the future needs of the municipality, and their action in the premises will not be interfered with except in a clear case of abuse of the discretion vested in them. (*Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; *Bell* v. *Mattoon Water-Works Co.* 245 id. 544; *Schuster* v. *Sanitary District,* 177 id. 626; *City of Chicago* v. *Sanitary District, supra.*) The evidence on the part of petitioner shows that there is no other public park or place suitable to be adapted to park purposes other than the lands in question; that the village has a steadily

increasing population, and that by reason of the land being low, not more than one-half or two-thirds of it can be used advantageously without filling in, except as a beach for boat landings, etc., and that the Mineral Point Zinc Company annually has considerable refuse matter from its plant suitable for filling in the low land and that it is willing to donate such refuse material to that purpose. It further appears that for some years the lands in question have been used in a general way for park purposes on occasions of the gathering of large crowds of people in the village on Labor Day and other holidays, and for picnics, etc. Appellant offered no evidence on this question. While the evidence contained in the record is not the most satisfactory, still we are unable to say, from such proofs as are before us, that the amount of land proposed to be taken is so excessive as to constitute an abuse of discretion in the village authorities when the diversified uses to which such property may be devoted are considered.

It is further insisted that no valid judgment was entered in the cause. There is no dispute as to what was done in the premises but only as to its sufficiency to constitute a valid judgment. The cause was tried at the October law term of the county court. The trial was concluded on November 27 and the motion for a new trial set for December 10, 1915. With respect to the proceedings had on this latter date, the minutes in the clerk's docket, after reciting the appearance of the parties and the filing by them of their reasons in support of their motion for a new trial, are as follows: "Arguments on motion for new trial, etc. Respective motions to set aside verdict and for new trial overruled. Judgment on verdict. Exceptions by all defts. present. Motion in arrest of judgment by all defts. present. Overruled as to each separate motion. Exceptions by each separate deft. Each deft. present prays an appeal to Supreme Court, etc. (See files.) Prayer for appeal allowed on each deft. filing bond in sum of $300 in 30 days. Bill

of exceptions in 100 days.  Order petn. pay damages by May 1, 1916.  Exceptions to all orders by defts. present. (See order.)"  The next proceeding shown by the clerk's docket is that of January 7, 1916, as follows:  "Comes Charles Banschbach and files appeal bond in sum of $300, with P. J. Smith as surety.  Approved by clerk and by judge."  The appeal bond filed by appellant, as shown by the judgment appealed from, recites, among other things, the following:  "The condition of the above obligation is such, that whereas the said village of Depue did on the 10th day of December, A. D. 1915, in vacation after the June law term of the county court, said court then being holden in the county of Bureau and State of Illinois, in an eminent domain proceeding, obtain a judgment and decree to enter upon certain real estate described in the petition filed by said village of Depue in said proceeding and also in said order described, and owned by said above bounden Charles Banschbach, upon the payment to the treasurer of Bureau county, Illinois, on or before the first day of May, A. D. 1916, for said Charles Banschbach, of the sum of three thousand eight hundred and eighty-five ($3885) in full compensation for all of his interests in the lands taken in said proceeding and in full compensation for all damages to lands not taken and belonging to him, and in full payment of the amount awarded to him, the said Charles Banschbach, by the verdict of the jury therein; from which said judgment the said Charles Banschbach has prayed and obtained an appeal to the Supreme Court of the State of Illinois."

On January 21, 1916, a draft of an order to be entered as the judgment in the case was presented to the judge and signed by him and filed with the clerk as of December 10, 1915.  This draft of the order incorrectly recited that the defendants filed their motions in arrest of judgment on December 10, and that the court set the hearing on said motions for December 15, 1915, and continued the cause until

that date; that on said last mentioned date the court heard arguments on such motions in arrest of judgment and overruled the same. After the order had been partly recorded the error was discovered, and the judge directed the attorney for petitioner to obtain the order and change it to conform to the facts, re-write the last page upon which his signature appeared, and submit the order to the attorney of appellant for approval and then bring it to him for his signature. This was done, and when the same was presented appellant appeared and objected to the signing, filing and entry of the order on the ground that the court had lost jurisdiction to enter any order in the cause because all matters and things in the proceedings in said cause were finally disposed of at the preceding October law term of said court. The court overruled the objections, signed the order and ordered the clerk to file the same as of December 10, 1915, and vacated and set aside all of that part of the previous orders signed by him on January 21, 1916, which had been partly copied into the records of the court.

Appellant contends that as the draft of the order was not signed by the judge until after the adjournment of the October term of the county court no judgment was entered in the cause at said term, and that as there were no matters pending in said cause to carry it over the term there are no sufficient minutes or memorandum in the files to justify the court in entering a judgment at the subsequent January term *nunc pro tunc* as of the October term. In *Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87, we held that a proceeding under the Eminent Domain act was one at law and that the judgment became effective as soon as it was pronounced by the court, and that it at once became the duty of the clerk to enter up the judgment of the court upon the records of the court. It was there further pointed out that while, in contemplation of law, the clerk writes up the judgment at once, in actual practice it frequently happens that the judge makes a memorandum

of the judgment pronounced on his docket, from which the clerk afterwards enters up the judgment in full in the records of the court.   In *People* v. *Petit,* 266 Ill. 628, we held we would take judicial notice of the fact that the record of proceedings of courts frequently are not written up during the term at which they are pronounced or rendered. We there further held that a judgment exists from the time it is pronounced by the court; that the minutes of the judge in the clerk's docket did not constitute the record of the judgment and were no part of the records of the court, but were sufficient memoranda from which the clerk might afterwards write up the judgment if one was actually rendered.   In the present case there is no dispute but that a judgment was rendered at the October term, and the only controversy is as to the date of the rendition of such judgment and the sufficiency of the memorandum of the clerk from which to write up the same.   The minutes in the clerk's docket show that the judgment was pronounced on December 10, 1915, and that no proceedings of any kind were had in said cause on December 15.   In this they are corroborated by the recitals in the appeal bond filed by appellant on January 7, 1916, perfecting his appeal from such judgment, and we think these minutes of the clerk, together with the files in the cause, constituted a sufficient memorandum from which the clerk could have written up the judgment of the court without any draft of the order signed by the court.   This was a proceeding at law, and no written order signed by the judge was necessary to give validity to the judgment pronounced by the court.   While it is advisable to follow the procedure adopted in this case and furnish the clerk with a draft of the order or judgment to be entered and have the same signed or approved by the judge, such a course is not necessary, and such signed order does not constitute the judgment of the court.   The clerk is not bound to follow it if it does not correctly set forth the facts in relation to the proceeding and the judgment pro-

nounced by the court, but may write up the judgment from the judge's minutes or his own minutes made on his docket. The record in this case contains a judgment of the court rendered on December 10, 1915, which imports verity, (*Wolf* v. *Hope*, 210 Ill. 50,) and we find nothing in the proceeding had on January 22, 1916, to impeach such judgment record. The judgment, therefore, as entered of record must stand, and the proceedings had on January 22 with respect to the draft of the form in which the judgment should be entered upon the record, had after the judgment had been pronounced by the court and the cause removed to this court by the perfecting of the appeal, (*Merrifield* v. *Western Cottage Piano Co.* 238 Ill. 526,) may be entirely disregarded.

Finding no reversible error in the record the judgment of the lower court will be affirmed.    *Judgment affirmed.*