THE CITY OF CHICAGO *et al.* Appellees, *vs.* THE SANITARY DISTRICT OF CHICAGO, Appellant.

*Opinion filed February 16, 1916.*

1. SANITARY DISTRICTS—*function of Sanitary District of Chicago.* The function of the Sanitary District of Chicago is to provide a channel into which sewage can be emptied and in which a flowage can be maintained sufficient to carry such sewage away from Lake Michigan, and the object of its creation is accomplished by providing and maintaining a channel sufficient to carry through it the drainage emptied into it by the municipalities in the district.

2. SAME—*Sanitary District of Chicago does not have control over the drainage of cities in the district.* The Sanitary District of Chicago does not have control over the drainage and sewer systems of the municipalities of the district, but its function is to provide a common outlet for such drainage and sewer systems.

3. EMINENT DOMAIN—*the city of Chicago may condemn right of way for sewer outlet through land of sanitary district.* The city of Chicago has power to condemn a right of way for a sewer outlet through a narrow strip of land owned by the Sanitary District of Chicago on the bank of the Chicago river, and its right to condemn is not restricted by the fact that the condemnation money is to be furnished by a private corporation under an ordinance obligating it to bear the expense of re-arrangement of a portion of the sewer system of the city, made necessary by the construction of a union railroad station by such corporation.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS TAYLOR, JR., Judge, presiding.

EDMUND D. ADCOCK, and P. C. HALEY, (W. C. ASAY, and WALTER T. STANTON, of counsel,) for appellant.

RICHARD S. FOLSOM, Corporation Counsel, LOESCH, SCOFIELD & LOESCH, and FREDERICK Z. MARX, (FRANK J. LOESCH, and CHARLES M. HAFT, of counsel,) for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an appeal by the Sanitary District of Chicago from a judgment of the circuit court of Cook county in a condemnation proceeding instituted by the city of Chicago against appellant.

The city of Chicago, pursuant to an ordinance adopted, sought to construct an intercepting sewer emptying into the south branch of the Chicago river, on the west side, about fourteen feet south of Washington street. This sewer was proposed for the outlet of a system of sewers draining a large area. Existing sewers emptying into the river at Madison, Monroe and Adams streets were to be discontinued and the sewage diverted into the proposed intercepting sewer, with its outlet near Washington street. The Madison, Monroe and Adams street sewers were of much smaller capacity than the proposed sewer and afforded outlets for the drainage of between 500 and 600 acres in area. The new sewer was designed to be the outlet for drainage of approximately 1500 acres. The land sought to be condemned is twenty feet wide, north and south, through a narrow strip of land belonging to appellant along the west bank of the south branch of the Chicago river. After the organization of appellant it acquired a strip of land extending from Washington to Madison street along the west bank of the south branch of the Chicago river, approximately sixty feet wide, for the purpose of enlarging the channel of the river. The land next to the river was sub-

sequently excavated by appellant, widening the channel to a width of two hundred feet. After this work was completed there was left of the land acquired by appellant a strip extending from Washington to Madison street of irregular width, varying from about twenty-three feet at its widest place to about one-half that width at its narrowest place. At the place where it is proposed to locate the sewer in question appellant's land is about twelve feet in width. Next to the river, and separating the land from the river, appellant has constructed a concrete wall or dock, extending from Washington to Madison street. This wall is six feet wide at the top, about thirteen feet wide at the bottom, and rests on piles driven deep into the ground. By condemnation proceedings the city of Chicago sought to obtain the right to construct a twenty-foot sewer passing through this narrow strip of land and emptying into the south branch of the Chicago river. Appellant has leased to private parties, for a term of thirty-five years, its strip of land between Washington and Madison streets. The lessee has constructed a building on part of the ground, but, as we understand it, the building does not occupy any part of the land sought to be condemned. The purposes for which the premises were authorized to be used by the lessee were "only for manufacturing, mercantile, shipping, storage and dock purposes and such purposes as shall be incident thereto." It is now being used by the lessee as a disposal station for city refuse, from which the material is loaded onto scows in the river. The just compensation of appellant was assessed at $15,000, and it is not claimed by appellant that this is insufficient for the land taken and damaged if the city had the right to condemn the property, and the right of the city to do this is the principal question of law raised on this appeal.

Appellant contends that its property is already devoted to a public use; that there is no express power given appellee to condemn such property, and the court was therefore

without jurisdiction to entertain the petition for condemnation. The appellees contend that section 2 of the Eminent Domain act confers the right upon it to condemn the property, and further contend that the property sought to be condemned is not devoted to a public use and is therefore subject to condemnation. To these questions the principal portions of the briefs on both sides are devoted.

The situation presented is unusual. The sanitary district was organized mainly to solve the sanitary and sewage problems of the city of Chicago by giving it an outlet for its drainage and sewage and preventing the contamination of the waters of Lake Michigan. (*People* v. *Nelson,* 133 Ill. 565.) In *City of Chicago* v. *Green,* 238 Ill. 258, this court said the Sanitary District act was passed to furnish a common outlet for the sewage of the incorporated municipalities in the district; that it recognized the existence of such municipalities and did not curtail their powers except in the one matter of a common outlet for their sewage and drainage; that the act was not intended to give the corporate authorities of the sanitary district control of the ordinary sewers and drains within its boundaries. In *Judge* v. *Bergman,* 258 Ill. 246, it was said the installation of a system of sewers connecting with the houses of a city was the province of the city and not within the powers of the sanitary district. The function of the sanitary district was to provide a channel into which the sewage could be emptied and maintain a flowage that would carry it away from Lake Michigan. That corporation was not intended to have the power to determine the system of sewers which could be adapted for the purpose of carrying sewage into the channel provided by it for that purpose. The outlet in any system of sewers designed to drain a large area, as is the case here, is an important element in the determination of the system. The object for which the sanitary district was organized is accomplished by providing and maintaining a channel sufficient to carry through it the drainage emptying

into it by the municipalities in the district. If by owning a narrow strip of land along the banks of the channel the sanitary district can prevent sewer connections with it except at such places as it may consent to, it could indirectly in a measure dictate to the city its plan of sewer systems. No such power was intended to be given by the Sanitary District act. In view of the purposes for which the sanitary district was organized or created and the powers given its corporate authorities, we think it must be held, whether given express power to do so or not, that the city has the power to condemn the land of the sanitary district, or anyone else, for the purpose of emptying its sewage into the channel. But even if that were not true, the land sought to be condemned is not devoted to the necessities of the district for the maintenance of its channel, and under the power of the city to construct and maintain sewers, and for that purpose to exercise the right of eminent domain, we are of opinion the city had the right to condemn the land in question. *Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 97 Ill. 506; *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 id. 589; *Chicago West Division Railway Co.* v. *Metropolitan Elevated Railroad Co.* 152 id. 519; *Chicago and Milwaukee Electric Railroad Co.* v. *Chicago and Northwestern Railway Co.* 211 id. 352; *Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District,* 218 id. 286; *City of Moline* v. *Greene,* 252 id. 475.

It is also contended by appellant that the property sought to be acquired is for the benefit of the Chicago Union Station Company; that the city is acting as a mere volunteer, and for that reason the proceeding should have been dismissed. The ordinance of the city of Chicago authorizing the Union Station Company to construct its extensive station and depot grounds west of Canal street, granted to the Union Station Company certain sub-surface rights. The

ordinance required the Union Station Company to pay all costs, charges and expenses of any re-arrangement or re-construction of the city drainage affected by the construction of the station, prescribed by the commissioner of public works, and the cost of acquiring the land in controversy is being paid for, pursuant to the ordinance and agreement of the Union Station Company, by that company. It is immaterial to the appellant, if the right to condemn exists, where the money comes from to pay the just compensation for the land taken and damaged, as the use for which it is sought to be taken is a public use. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville*, 169 Ill. 25; *Summerfield* v. *City of Chicago*, 197 id. 270.) Whether, also, the location and character of the improvement are "useful, advantageous or desirous for municipal purposes" is a question for determination by the city, subject, only, to review by a court where there is an abuse of power. *Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District, supra; Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 Ill. 333; *Summerfield* v. *City of Chicago, supra.*

It is also contended that the discharge of the sewage at the place proposed will create a nuisance and cause a great danger of the pollution of Lake Michigan in times of flood. Upon this question there was some conflict in the testimony, but in our opinion appellant's contention was not sustained by the weight of the evidence.

Without extending this opinion by a discussion of every possible objection raised by appellant, it is sufficient to say we are of opinion there was no error in the proceedings or in the judgment of the circuit court, and it is affirmed.

*Judgment affirmed.*