THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* DOUGLAS McCAUGHEY *et al.* Appellees.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

Oscar E. Carlstrom, Attorney General, George V. Helfrich, and Flack & Kerman, (Harlington Wood, of counsel,) for appellant.

Philip E. Elting, and Scofield & Bell, for appellees.

Mr. Justice Heard delivered the opinion of the court:

This is an appeal from an order and judgment of the county court of McDonough county dismissing appellant's petition for the condemnation of a strip of land about 2000 feet in length and containing about 6.29 acres, the acquisition of which was sought for the purpose of constructing thereon a part of one of the durable, hard-surfaced roads known as Route 9 of the sixty million dollar bond issue system.

Appellees contend that the taking of this land is unnecessary and that the action of appellant in locating the road over the land in question was unreasonable and arbitrary. There is a highway running north and south on the west side of 80 acres of land belonging to appellees, over which 80 acres it is proposed to run the hard road. This road constitutes a gap in the hard road in question as now existing and is a cinder and gravel road. From the north end of this gap the hard road has been constructed toward the city of Bushnell. From a point a few hundred feet south of the end of this gap the hard road has been constructed toward the southwest, running to Macomb and other points. The petition in this case, in connection with the other evidence, shows that it is the intention of appellant to divert the road from its southerly course and run the same southeasterly into the 80-acre tract for about 2000 feet and then swing around in a curve to the southwest over the railroad tracks near the southwest corner of the 80-acre tract. This is denominated in the petition one of the minor changes provided for by the statute.

The testimony of the assistant district engineer shows that the present highway, being the cinders-and-gravel gap, intersects the Toledo, Peoria and Western railroad, consisting of a single track, at an angle of approximately ten degrees, and then, at a distance of from 300 to 400 feet farther south, crosses the two tracks of the Chicago, Burlington and Quincy railroad at an angle of twenty-five or thirty degrees. Although the tracks of these two railroads are separated by a distance of from 300 to 400 feet where they cross the public highway on the west side of the 80-acre tract, the two railroads approach as they pass over the southwestern part of the 80-acre tract, so that the tracks of the two roads lie together at the public highway which runs east and west along the south end of the 80 acres. The public highway running east and west at the south end of the 80 acres runs on west and connects with the public highway which runs north and south on the west side of the 80 acres and continues thence on west to other points. There is also an old road which runs from the east and west road at the south end of the 80 acres in a northwesterly direction east of the railroad tracks, connecting with the north and south road. The point where the railroad tracks cross the road which runs east and west at the south end of the 80 acres is approximately 800 feet from the general location of the two grade crossings on the north and south road on the west side of the 80 acres. The assistant engineer expressed his opinion that there would be a greater degree of safety to the users of the highway by crossing the railroads in the manner now proposed, with the tracks together, than by crossing on the old north and south road, because the angle would be less acute and there would be one crossing instead of two. He testified that the proposed route was further selected because a grade separation might be made at some later date, but that whatever might be contemplated for the future was not a part of the present plans, and that, as it now stands, under the plans in evidence the crossing will be

a grade crossing, with some foresight on the part of the designer of the plans of the work which might later follow. He testified that it was impossible to construct a grade separation on the existing highway; that the feasibility of constructing this highway along alignments other than the one proposed here was given attention by the department.

Four witnesses testified on the part of appellees as to the comparative safety of the proposed new crossing and the present crossings on the north and south road. These witnesses had lived in that vicinity for many years. They were farmers and had traveled these roads from thirty to fifty years. Although one of them had been struck by a train when driving an automobile along the north and south road, he, as well as the other three, testified that the two crossings on the north and south road on the west side of the 80 acres, which are separated by a distance of from 300 to 400 feet, were safer than the crossing on the east and west road, where the tracks lay together at the south end of the 80 acres. This testimony was received subject to objections. These four witnesses were not shown to have been qualified by special study and experience to express expert opinions on the subject.

In a general way the Sixty Million Dollar Bond Issue act fixes the routes upon which the roads are to be constructed, by naming the termini, which are in some cases hundreds of miles apart with no direct highway leading from one to the other, and in other cases several highways leading from one to the other with many public highways intervening, and the power is delegated to the Department of Public Works and Buildings to determine, with the approval of the Governor, the exact highway between the termini upon which the road is to be constructed. (*Mitchell v. Lowden,* 288 Ill. 327.) By the act in question such determination is made final. The fact that the act expressly authorizes the department to make minor changes in the location, and to secure, by purchase or condemnation, rights

of way for such changes, plainly shows that the department was not intended to be restricted to the exact location of an existing highway in building a hard-surfaced road. (*People* v. *Department of Public Works,* 320 Ill. 117.) At the time many of the existing highways were opened it is well known that no great pains or care was taken in selecting the location and that they followed winding Indian trails, and that engineering problems as to minimizing distance and adding safety to rapid transit did not enter into the location of the roads. The present route is a part of the State-wide system, and the primary interest to be considered is that of the State at large and not that of a particular locality in which the road is built. By the terms of the act it is manifestly left to the discretion of the department to select the safest, most direct route and the one best adapted to the persons making use of the route. (*MacGregor* v. *Miller,* 324 Ill. 113.) Means of transportation have entirely changed since many of the existing highways were built. The roads to be constructed under the bond issue acts are not for present use, alone, but are to be hard-surfaced and constructed of durable material, to last for many years. As to the amount of land appropriated in matters of this kind, the Department of Public Works is vested with a broad discretion in determining the amount to be taken. It has a right to, and should, anticipate the future needs of the municipality, and its action in the premises will not be interfered with except in a clear case of abuse of the discretion vested in it. (*Village of Depue* v. *Banschbach,* 273 Ill. 574; *Smith* v. *Drainage District,* 229 id. 155.) The general rule is, that where the right of eminent domain is granted, the question of the necessity for its exercise and in what cases it may be exercised, within constitutional restrictions, is a legislative and not a judicial question, and its exercise is not a proper subject for judicial interference or control unless to prevent a clear abuse of such power. (*City of Chicago* v. *Sanitary Dis-*

*trict,* 272 Ill. 37; *City of Paris* v. *Cairo, Vincennes and Chicago Railway Co.* 248 id. 213.) At the point where it is here sought to cross the railroads the view is unobstructed in both directions. It needs no expert testimony to demonstrate the fact that a crossing at an angle of seventy-five degrees is safer for the traveling public than one of ten degrees. When the greater safety to traffic afforded by the change in location is considered, the department acted within its power and authority, and it cannot be said that it acted arbitrarily in deviating from the present highway. (*People* v. *Department of Public Works,* 326 Ill. 589.) The department having fairly considered the various routes proposed and having located the road according to its best judgment, and not having acted arbitrarily in the premises, this court would not be warranted in interfering with its judgment. *Wiley* v. *Department of Public Works,* 330 Ill. 312.

Among the lands sought to be taken is a triangular piece, consisting of a little more than an acre, at the junction of the proposed route and the old road running along the railroad right of way, and it is contended by appellees that there was no evidence tending to show any necessity for the acquisition of this piece. It is claimed by appellant that this would be necessary in the future, when a separation of grades was sought. It is a well known fact that it is much safer for one going from the hard road to a side road, or for one coming from a side road onto the hard road, to do so upon a curve rather than at right angles, and that, wherever practicable, corners are being rounded for that reason.

It is contended by appellees that no *bona fide* effort for agreement as to compensation was made or attempted by appellant and that the evidence wholly fails to show inability to agree. The proof shows that a definite offer for the land to be taken was made by a committee of citizens of Bushnell, who were authorized to make such offer by ap-

pellant's district engineer who had the matter in charge. The offer was refused.

From a consideration of the petition and the evidence offered upon the hearing upon the legal objections we are of the opinion that appellant was justified in attempting to condemn the land, and the court erred in sustaining the objections and dismissing the proceedings. The judgment of the county court is therefore reversed and the cause remanded to that court.

*Reversed and remanded.*