(No. 32210.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* H. L. LEWIS *et al.*—(ELLA WILSON PYLE *et al.*, Appellees.)

*Opinion filed January 24, 1952.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (W. T. DENNIS, of Harrisburg, and C. S. CONGER, of Carmi, of counsel,) for appellant.

PYLE & McCALLISTER, of Carmi, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Department of Public Works and Buildings filed its petition in the circuit court of White County to condemn lands for widening and otherwise improving State Bond Issue Route No. 14. Defendants Ella Wilson Pyle and nine others, owners of part of the property sought to be condemned, filed a traverse and motion to dismiss, alleging a lack of necessity for the taking. The motion was denied

as to the larger portion of defendants' tract, but as to a strip of land about 610 feet in length and 10 feet in width, the motion was sustained and a judgment entered dismissing the petition. Plaintiff prosecutes a direct appeal pursuant to section 12 of the Eminent Domain Act. (Ill. Rev. Stat. 1951, chap. 47, par. 12.) A freehold is also involved.

Route No. 14, a State Aid Bond road running from Carmi in a westerly direction, is also a Federal Aid highway designated as Federal Route No. 460 and leading from St. Louis to points east. Throughout the area in question it runs over flat, low land, and is constructed on a rather high fill, the general elevation of the pavement above the surrounding land being about five feet. There are hills at the east and west ends of the low, flat area in which the land in controversy lies. At the present time, Route No. 14 has a sixty-foot right of way, an eighteen-foot concrete pavement, six-foot shoulders on each side, and a slope to the ground level in front of the ten-foot strip of three feet horizontally to one foot vertically. There is no drainage ditch at the bottom of the slope along the ten-foot strip.

The road was constructed in the middle 1920's, and has now begun to deteriorate. It was constructed as a Class C road, that is, one designed to carry less than 2500 vehicles a day. Because of increased traffic due, in part, to the opening of a new bridge and the discovery of oil in White County, it has become a Class B road (2500 to 5000 vehicles a day). Under State specifications and Federal regulations applicable to Federal Aid routes, the following norm has been established for Class B roads: a right of way 120 feet wide, 22-foot pavement, 10-foot shoulders, a slope three feet horizontally to one vertically, and drainage ditches at the bottom of the slope.

It was to bring Route No. 14 in line with the standards described that plaintiff filed its petition in the circuit court, seeking condemnation of a specified ten-foot strip for a distance of 610 feet and a 30-foot strip through the balance

of defendants' land. Plaintiff restricted itself to the ten-foot width for the distance specified because directly north of the right of way at this point lies the defendants' yard and house, the distance from the front porch to the present right-of-way line being fifty-two feet. Out of consideration for this special situation, plaintiff narrowed its requirements, believing that by special construction the ten-foot strip could be made to suffice for a short distance.

Plaintiff's engineer testified that a ten-foot shoulder was necessary so that automobiles and especially trucks could safely park off the highway; that the three-to-one slope was insisted upon by Federal authorities and was essential to prevent erosion, to allow for the use of modern maintenance machinery thereby reducing maintenance costs, and as a safety factor if a car should run off the road; and that in his opinion, the proposed four-foot ditch at the bottom of the slope along the ten-foot strip would provide proper drainage. He concluded that the ten-foot addition sought was an absolute minimum.

There was testimony by witnesses for the defendants that a ditch was unnecessary, and would not be useful, and that there exist two alternative methods which eliminate the hardship caused by the proposed improvements on the north side of the road: the pavement and shoulder could be widened without disturbing the present right of way on the north side by adjusting the slope to roughly a two-to-one ratio, or the entire expansion could be placed on the south side of the pavement, thus effecting a curve.

The sole issue made by the pleadings, developed by the evidence, and argued upon this appeal is whether a necessity existed for the condemnation of the ten-foot strip in front of the yard and house. The word "necessary" in statutes such as the instant one "should be construed to mean 'expedient,' 'reasonably convenient' or 'useful to the public,' and cannot be limited to an absolute physical necessity." (*Aurora and Geneva Railway Co.* v. *Harvey*, 178 Ill.

477, 485; see, also: *Indianapolis Water Co.* v. *.Lux,* 224 Ind. 125, 64 N.E. 2d 790, 793.) Conversely, the word "necessary" does not mean "indispensable," as appellees argue, or "an absolute necessity." The general rule is that, where the right of eminent domain is granted, the necessity for its exercise, within constitutional restrictions, is not a judicial question, and its exercise is not a proper subject for judicial interference or control unless to prevent a clear abuse of such power. (*Department of Public Works and Buildings* v. *McCaughey,* 332 Ill. 416; *City of Chicago* v. *Sanitary District of Chicago,* 272 Ill. 37.) This court, in considering the principle involved in the instant case, in *Smith* v. *Claussen Park and Levee Drainage Dist.* 229 Ill. 155, 163, stated, "If the court finds that the use for which the property is to be taken is a public one, then the court will not inquire into the extent to which the property is necessary for such use unless it appears that the quantity of property taken is grossly in excess of the amount necessary for the use." (*Department of Public Works and Buildings* v. *McCaughey,* 332 Ill. 416; *City of Chicago* v. *Sanitary District of Chicago,* 272 Ill. 37.) No such abuse is shown upon the record made in this case.

When plaintiff ascertained that Route No. 14 had become a Class B highway and was in need of reconstruction, it was within its authority to improve the road so that it meet the needs and specifications of that class. (Ill. Rev. Stat. 1951, chap. 121, pars. 296, 298, 299.) It is undisputed that the proposed improvement, namely, the widening of the pavement and shoulders and provision for a three-to-one slope with proper drainage at the bottom of the slope, falls well within the norm established by the State and Federal authorities for Class B or Federal routes. The necessity for such improvements in view of the increased traffic is obvious and needs no elaboration. And, irrespective of whether these improvements were absolutely necessary, it cannot be argued that they were not "expedient,"

"reasonably convenient" or "useful to the public." *Aurora and Geneva Railway Co.* v. *Harvey,* 178 Ill. 477, 485.

The specifications concerning pavement and shoulder width, slope and drainage are all required under the Federal authorities. The fact that Route No. 14 is also a Federal Aid road, for which plaintiff is apparently seeking further Federal aid, reinforces the necessity and propriety of plaintiff's action. (Ill. Rev. Stat. 1951, chap. 121, pars. 257, 263.) In *Porter* v. *Iowa State Highway Com.* 241 Iowa, 1208, 44 N.W. 2d 682, the Supreme Court of Iowa noted the requirements under Federal regulations for a ten-foot shoulder, three-to-one slope, and proper drainage, and approved condemnation proceedings to effect such improvements.

It is apparent that the circuit court in reality recognized the necessary for the taking. For in the same order which refused condemnation of the ten-foot strip, the court overruled the defendants' motion to dismiss as to the thirty-foot strip through the remainder of their land and permitted condemnation. Since the same fill and the same improvements are involved, it is obvious that the necessity must be the same. The only difference is the hardship to the defendants attendant upon the ten-foot improvement. Hardship of this character is not a proper factor in the determination of the question of necessity. If there was a necessity for the improvements on the thirty-foot strip, *a fortiori,* there was a necessity for them on the ten-foot strip. The hardships involved go solely to the question of compensation to be accorded in order that the defendants be made whole.

Defendants' proposed alternatives present engineering and not judicial questions. The number of curves to be constructed, and the desirability of a particular curve are matters to be determined by engineers. (See *United States* v. *40.75 Acres of Land,* 76 F. Supp. 239.) And the degree of slope presents questions involving safety, and economy

and feasibility of maintenance. In view of these factors it cannot be said that no necessity existed for appropriation by the Department of land to effect the proposed improvement. (*Porter* v. *Iowa State Highway Com.* 241 Iowa, 1208, 44 N.W. 2d 682.) In *Department of Public Works and Buildings* v. *McCaughey,* 332 Ill. 416, 420, this court said, "As to the amount of land appropriated in matters of this kind, the Department of Public Works is vested with a broad discretion in determining the amount to be taken." See, also, Lewis, Eminent Domain, 3d ed., sec. 601.

The authority and power of the Department in establishing, maintaining and improving the highways of the State is broad and plenary, and it is only in the exceptional case where such authority and power has been manifestly abused that a court may interfere. This is not such a case.

The order and judgment of the circuit court of White County are reversed and the cause is remanded, with directions to overrule defendants' motion to dismiss the complaint.

*Reversed and remanded, with directions.*