THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellee, *v.* JOHN G. KELLER *et al.*, Respondents-Appellants.

Fifth District No. 5—84—0022

Opinion filed September 5, 1984.

Harry J. Sterling, P.C., of Fairview Heights, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roy E. Frazier, Jr., Assistant Attorney General, and Paul D. Giamanco, Special Assistant Attorney General, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Appeal is taken from an order of the circuit court of Madison County denying dismissal of a series of petitions in eminent domain filed by the Department of Transportation (petitioner). Petitioner sought acquisition of specific parcels of land for the purpose of constructing a 5.5-mile extension of Interstate 255. Petitioner also filed motions for immediate vesting of title pursuant to section 7—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 7—103). The landowners (respondents) subsequently filed a traverse and motion to dismiss the Department's petitions. A hearing on these motions was held on November 22 and 23, 1983. The order denying respondents' motion to dismiss was entered on December 7, 1983. A hearing on the motion for immediate vesting of title was held on December 12, 1983. Separate orders establishing preliminary compensation to respondents were entered on January 3, 1984, and January 13, 1984. From these orders, respondents appeal. The issues presented are (1) whether the evidence before the trial court was sufficient to sustain the finding that the properties were subject to the power of eminent domain, and (2) whether the trial court erred in precluding testimony of certain witnesses regarding the necessity of the proposed acquisitions.

The primary witness on behalf of petitioner was Mr. Frank D. Brown, a civil engineer and condemnation coordinator for the Illinois Department of Transportation. Mr. Brown described the proposed project for which petitioner sought condemnation of respondents' prop-

erty. Mr. Brown testified that funding for the project had been approved by the Governor and the State legislature, and identified the various parcels needed for its construction. The amount of the land sought by petitioner was, in Mr. Brown's opinion, a reasonable quantity for construction of the highway. Other witnesses for petitioner included Mr. Laurel D. Berger and Mr. Frederick Bartelsmeyer, also civil engineers working for the Department of Transportation. Witnesses called on behalf of respondents included Mr. Dale Klohr, district engineer for the Department of Transportation, and two of the respondent landowners, John Keller and Gordon Gass. Respondents' counsel attempted to question each of these witnesses regarding the "necessity" of the condemnation. Petitioner's objections to some of these questions were sustained.

Preliminary findings of compensation in eminent domain proceedings are governed by section 7—104 of the Code of Civil Procedure, which reads in part:

> "(b) At the hearing, if the court has not previously, in the same proceeding, determined that the plaintiff has authority to exercise the right of eminent domain, that the property sought to be taken is subject to the exercise of such right, and that such right is not being improperly exercised in the particular proceeding, then the court shall first hear and determine such matters. ***

> (c) *** If the court finds that reasonable necessity exists for taking the property in the manner requested in the motion, the court then shall hear such evidence as it may consider necessary and proper for a preliminary finding of just compensation ***."

Respondents first contend that petitioner failed to establish its right to condemn respondents' property pursuant to section 7—104. Where a traverse is filed in an eminent domain proceeding, the burden is on the petitioner to make a *prima facie* case of the reasonable necessity of acquiring the disputed property. (*Trustees of Schools v. First National Bank* (1971), 49 Ill. 2d 408, 414, 274 N.E.2d 56.) "Necessity" for purposes of condemnation means simply that the State's acquisition of land is "expedient," "reasonably convenient," or "useful to the public." (*Department of Public Works & Buildings v. Lewis* (1952), 411 Ill. 242, 245-46, 103 N.E.2d 595.) Our review of the record indicates that petitioner met this burden. The testimony offered by Frank Brown, Laurel Berger, and Frederick Bartelsmeyer contained evidence sufficient to establish a *prima facie* showing that the project for which acquisition of the lands was sought was useful to the public, and that the acquisitions themselves were a reasonable and expedient means of

effecting the project.

 Respondents also contend that petitioner was without authority to exercise the powers of eminent domain since the construction plans offered as evidence at the hearing were not "final plans." The record indicates, however, that the State's plans were final to the extent that circumstances would reasonably allow. The fact that the Department of Transportation could not offer extensive plans for every parcel of land sought in the acquisition, or for every phase of a project which would extend over a period of several years, did not deprive the Department of authority to condemn the various tracts. Neither was the Department required, as respondents suggest, to obtain, prior to acquiring title, every permit which might be required in the course of construction. The case of *Department of Public Works & Buildings v. Vogt* (1977), 51 Ill. App. 3d 770, 366 N.E.2d 310, upon which respondents rely, is inapposite. In *Vogt*, the appellate court held that a trial court did not err in vacating its prior "quick take" order vesting title in the condemnor, where the condemnor had delayed the proposed construction for five years and, in so doing, had deprived the condemnees (who had received no compensation) of the value of their property during that period.

 Respondents next argue that public policy, expressed by the Illinois legislature in the "Agricultural Areas Conservation and Protection Act" (Ill. Rev. Stat. 1981, ch. 5, par. 1002), precludes petitioner from taking at least two of the parcels. We agree with the trial court that, although the statement of legislative intent contained in the Act displays a manifest desire to preserve agricultural land from unnecessary and ill-considered development, the Act does not create a barrier to eminent domain simply by virtue of the fact that the property sought is utilized for agricultural purposes. Condemnation of the tracts in the instant case was not, in our judgment, precluded by either the statute or the policy upon which it was founded.

Respondents' final contention is that the court erred in restricting the examination of the aforementioned witnesses with regard to the "necessity" of the condemnations. In ruling on one of the objections, the trial court offered the following analysis:

> "The question we are limited to here is whether the lands which are sought to be taken here are going to be put to a public use, and whether the land that is being taken is necessary for that public use as determined by the legislature and executive department, who is determined to take this property. *** The question then becomes whether *** the land that is being taken is necessary for that public use. And I think for the Court to

consider a necessity, meaning whether it is necessary to go here or across a golf course, would open up all the ranges of discretionary determinations that are made by this branch of the government."

The court's remarks imply that the term "necessary," and consequently the issue of whether the acquisitions are "necessary," are subject to two meanings, one of which forms the basis of an inquiry which is properly before the court, and one of which is not. This is another way of stating that the term "necessary," for purposes of condemnation proceedings, is subject to a definition other than that to which the term is subject in common discourse. This distinction was recognized implicitly by the Supreme Court of Illinois in *Department of Public Works & Buildings v. Lewis* (1952), 411 Ill. 242, 245-46, 103 N.E.2d 595:

> "The word 'necessary' in statutes such as the [Eminent Domain Act] 'should be construed to mean "expedient," "reasonably convenient" or "useful to the public," and cannot be limited to an absolute physical necessity.' [Citations.] Conversely, the word 'necessary' does not mean 'indispensable' *** or 'an absolute necessity.' The general rule is that, where the right of eminent domain is granted, the necessity for its exercise, within constitutional restrictions, is not a judicial question, and its exercise is not a proper subject for judicial interference or control unless to prevent a clear abuse of such power. [Citations.] This Court *** in *Smith v. Claussen Park and Levee Drainage District*, 229 Ill. 155, 163, stated, 'If the court finds that the use for which the property is to be taken is a public one, then the court will not inquire into the extent to which the property is necessary for such use unless it appears that the quantity of property taken is grossly in excess of the amount necessary for the use.'"

█ The question of whether a public taking is "necessary," then, may be an inquiry directed to one of two fields of reference. It may, first, constitute an attempt to determine the veracity of that proposition of which the petitioner is obliged to make a *prima facie* showing in the first instance—*i.e.*, that the purpose for which the land is sought is one of public convenience, and the acquisition, reasonable in scope, is an expedient means of accomplishing the purpose. It may, second, constitute an attempt to determine whether, given the legitimacy of the project, a given acquisition is "indispensable"—*i.e.*, the only means of accomplishing a purpose, the public convenience and reasonable scope of which are not at issue. According to the rule set forth in

*Lewis*, the first question would fall within the scope of judicial inquiry and the second question would not. The resolution of the issue presented in the instant case thus depends on a determination of precisely what questions the witnesses were not allowed to answer.

■ The record reveals that respondents have no legitimate complaint with regard to the testimony of their own witnesses, John Keller and Gordon Gass. Both witnesses were permitted to express their personal opinions regarding the necessity of the proposed acquisitions insofar as the acquisitions would promote public convenience or utility. The problematical question asked of respondents' witness Dale Klohr appears to have referred to "necessity" in the sense of public utility; however, contrary to the implications in respondents' brief, Mr. Klohr was permitted to answer the question. The testimony of petitioner's witnesses, Frank Brown and Laurel Berger, was not, in our judgment, unfairly limited. The questions regarding "necessity" asked of Mr. Brown, to which the court sustained objections, were directed to the possibility of alternate routes ("necessity" in the second sense), and not to the public utility of the project or the scope and expedience of the acquisitions. Petitioner's objections were properly sustained. The question asked of Laurel Berger regarding the "necessity" of the highway project appears to have been directed to the issue of public utility. While petitioner's objection to the question was sustained, Mr. Berger answered, prior to the objection, that he had no opinion on the matter. The court's apparent error in sustaining the objection cannot, therefore, be viewed as prejudicial. The court also sustained petitioner's objections to questions asked Frederick Bartelsmeyer. Mr. Bartelsmeyer was not allowed to state whether he participated in the decision as to whether the highway project was "necessary." This question, again, appears directed to the issue of public utility, and Mr. Bartelsmeyer should have been allowed to answer. Nevertheless, we cannot view the trial court's ruling as reversible error. The evidence before the court, including the opinions of the other witnesses, was sufficient to enable the court to make an informed decision on the issue of public convenience. It cannot be inferred from the record that the opinion of Mr. Bartelsmeyer was critical in this regard.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

KARNS and JONES, JJ., concur.