THE CITY OF ELGIN, Plaintiff-Appellant, v. ELGIN NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—87—3285

Opinion filed September 1, 1988.

Erwin W. Jentsch, Daniel P. Clondin, and William A. Cogley, all of Corporation Counsel's Office, of Elgin, for appellant.

Righeimer, Martin, Bridewell & Cinquino, P.C., of Chicago (Leo N. Cinquino and Sandra L. Hebenstreit, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, the City of Elgin, filed an eminent domain complaint seeking to take 14 acres of land for the purpose of constructing a flood control facility. The defendants, Elgin National Bank, as trustee under trust No. 305, Bernard E. Cavitt, James Wilder, and unknown owners, filed a traverse and motion to dismiss on the ground that the taking was excessive. The trial court sustained the defendants' traverse and motion to dismiss. The plaintiff appeals.

The property which the plaintiff seeks to take is located in the City of Elgin. It is rectangular in shape and is bounded on the south

by Poplar Creek. The plaintiff proposes to construct a levee in order to control flooding by Poplar Creek. The levee would extend approximately 1,400 feet diagonally across the defendants' property from its southwest corner to a point near its northeast corner. The property north of the levee would be used for a detention pond. The detention pond would store water in order to prevent flooding of the adjacent land.

The plaintiff's proposal was originally recommended in a 1976 report entitled "The Poplar Creek Watershed Study," which was prepared by the Poplar Creek Steering Committee with assistance from the State of Illinois, the Metropolitan Sanitary District of Greater Chicago (MSD), and the United States Department of Agriculture, Soil Conservation Service and Forest Service (SCS). The study addressed, among other things, the problems caused by the flooding of Poplar Creek and proposed the construction of a levee on the defendants' property. Although the study is not a design manual, technical data as to water flows, floodplain, floodway, and elevations were supplied by a preliminary engineering design report prepared by the SCS. This engineering report projected that 5½ acres would be required for the levee and interior drainage needs.

In July of 1984, the plaintiff and the Illinois Department of Transportation (IDOT) entered into a sponsorship agreement which stated that IDOT would prepare all plans and specifications. This plan would designate the land necessary for the project. In 1985, the plaintiff passed an ordinance authorizing the acquisition of the subject property for flood control purposes in accordance with the IDOT plan.

At trial, Robert Culli, a civil engineer employed by IDOT, testified for the plaintiff. Culli was responsible for refining the project as originally outlined in the 1976 study. Specifically, Culli worked on the hydraulic design of the levee. Culli testified that in preparing his layout of the project, he relied on technical data in the SCS preliminary engineering report as well as his own computations. When asked questions regarding relocation of the levee along the south and east boundary lines of the subject property, Culli responded that he never studied what effect relocation of the levee would have on land in the surrounding area. Culli concluded that the land which the plaintiff proposed to take is useful, necessary, and convenient for the construction of the levee and detention pond. This conclusion was repeated by Gary Miller, director of public works for the City of Elgin, who also testified for the plaintiff.

William Lindley, a civil engineer, testified for the defendants. Lindley stated that some levee, dike or other control must be pro-

vided along Poplar Creek to restrict the flow of floodwaters. Lindley made a study of the subject area and proposed, over the plaintiff's objection, an alternative design to prevent flooding in the area. Lindley testified that his alternative design would accomplish the same result as the plaintiff's plan.

Lindley's flood prevention proposal would be accomplished by constructing a dike across the eastern and southern edge of the subject property instead of in the middle of the property. A detention area would be located partially upon the subject property but mostly located upon other property located immediately north, owned by the Elgin Rifle Club. A gravity drain would be constructed running south from the detention area. Lindley did not know if the City of Elgin owned this property upon which its gravity drain would be placed.

In Lindley's opinion, the taking of 14 acres for the purpose of preventing flooding in the area is unnecessary and excessive. Lindley stated that 14 acres are not necessary because the same result could be accomplished with his plan, which would require taking only two acres for the levee, a small part of the subject property for detention, and a small part of property north of the subject property which is owned by the Elgin Rifle Club. Lindley stated that this was in conformance with the preliminary engineering study made by the SCS report which projected a taking of approximately five acres.

On appeal, the plaintiff argues that the trial court's conclusion that the taking is excessive is against the manifest weight of the evidence. We agree.

■ Judicial review of the amount of a taking involves a determination of whether the taking is grossly in excess of the amount necessary for the use. (*Department of Public Works & Buildings v. Lewis* (1952), 411 Ill. 242, 246, 103 N.E.2d 595, 597-98.) The defendants argue that the taking is grossly excessive because there is another way to design the project which would require taking less of the subject property.

The supreme court addressed the relevancy of alternative designs in *Department of Public Works & Buildings v. Lewis* (1952), 411 Ill. 242, 103 N.E.2d 595. In *Lewis*, the Department of Public Works sought to take a 10-foot shoulder for road expansion. The defendants produced evidence that there were two alternate methods, adjusting the slope or placing the expansion on the other side of the pavement, thereby effecting a curve. In response to the defendants' proposed alternatives, the supreme court stated that design alternatives present matters which are to be decided by engineers and are not to be considered by the courts. *Lewis*, 411 Ill. at 247, 103 N.E.2d at 598.

In the instant case, the defendants' plan would move the levee and detention pond to a different location. The project proposed by the plaintiff and the defendants' alternative would accomplish the same result. Whether it is better to build a dike along the edge of the subject property or down the middle, whether it is better to have a detention pond located exclusively on the subject property or mostly on property located north of the subject property, and whether a certain plan would adversely impact other property in the floodplain are all engineering questions and are not properly decided by the court.

 The question to be answered by the court is very specific: whether the taking is grossly in excess of that needed for the *plan as proposed by the governing body*. (*City of Chicago v. Vaccarro* (1951), 408 Ill. 587, 97 N.E.2d 766.) The fact that there could be another plan which would take less of the defendants' property does not address the question of whether or not the plaintiff needs 14 acres for its plan. The only evidence which the defendants presented to show that 14 acres was not needed to accomplish the plan as designed by the City of Elgin was the initial SCS report which projected the taking of only five acres to complete the project. However, that report was only preliminary and is not conclusive on how much land is needed to complete the plaintiff's project. Without any evidence to show that the plaintiff will not use all 14 acres to build the flood control facility as planned, we cannot say that the taking is excessive.

The defendants cite several cases, mostly from other jurisdictions, where the court found that a taking was excessive. (See, *e.g.*, *People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 427 N.E.2d 70; *Krauter v. Lower Big Blue Natural Resources District* (1977), 199 Neb. 431, 259 N.W.2d 472; *Seadade Industries, Inc. v. Florida Power & Light Co.* (Fla. App. 1970), 232 So. 2d 46.) However, in each of these cases the governing body was taking more than it needed to accomplish the proposed project. None of the cases held that the taking is excessive because there is another way to design the project which would require less land. The focus in all of the cases is on the project *as designed by the condemning authority* which could not account for all of the property it proposed to take.

So, for example, in *Krauter v. Lower Big Blue Natural Resources District* (1977), 199 Neb. 431, 259 N.W.2d 472, a taking was excessive where the condemnor proposed to acquire 328 acres but according to the condemnor's own plan only 140.68 acres were needed for the proposed dam. The property owner in *Krauter* did not argue that less land would be needed if the project were redesigned. Rather, the property owner argued that the condemnor failed to identify any pro-

posed use for the amount of property in excess of the 140.68 acres that it proposed to take.

In the instant case there is no evidence to show that 100% of the 14 acres will not be used for the project as proposed by the City of Elgin. We therefore conclude that the trial court's finding that the taking was excessive was against the manifest weight of the evidence. For the foregoing reasons, the decision of the trial court is reversed.

Reversed.

LINN and McMORROW, JJ., concur.